# 22-1057(L)

*To Be Argued By:*
NEERAJ N. PATEL

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

**Docket Nos. 22-1057(L)**
**22-1061(Con)**

_____

DANIEL E. CARPENTER,
GRIST MILL CAPITAL LLC,

*Plaintiffs-Appellees-Cross-Appellants,*

-vs-

LYNN ALLEN, CHERI GARCIA,
TIMOTHY CORSI,

*Defendants-Appellants-Cross Appellees,*

(For continuation of caption, see inside cover)

_____

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF CONNECTICUT

### RESPONSE AND REPLY BRIEF FOR THE
### DEFENDANTS-APPELLANTS-CROSS-APPELLEES

VANESSA ROBERTS AVERY
*United States Attorney*
*District of Connecticut*
157 Church Street, 25th Floor
New Haven, Connecticut 06510
(203) 821-3700

NEERAJ N. PATEL
SANDRA S. GLOVER *(of counsel)*
*Assistant United States Attorneys*

JOHN DOES, 1-100, JANE DOES, 1-100,

*Defendants.*

# Table of Contents

Table of Authorities ............................................ iii

Supplementary Statement of Jurisdiction ...... viii

Statement of Issues Presented for Review ........ xi

Preliminary Statement ........................................1

Statement of the Case .........................................4

    A. Carpenter's motion to suppress, and this
       Court's affirmance of the denial of that
       motion .........................................................5

    B. The two separate *Bivens* actions ...............7

Summary of Argument ..................................... 10

Argument......................................................... 12

I. The district court abused its discretion by
  granting the Rule 41(g) motion .................... 12

    A. The government properly seized the
       documents from 100 Grist Mill Road
       by search warrant and subpoena. ............ 14

    B. The government still needs the seized
       materials for a potential retrial and to
       defend against Carpenter's challenges to
       his convictions. ......................................... 18

i

C. The government's statements during the prior IRS *Bivens* appeal do not support returning any property at this time......... 24

D. The fact that GMC was not prosecuted or convicted is irrelevant to the issues here ........................................................ 25

II. As a matter of equity, the district court properly exercised its discretion to order the government to destroy—rather than return—the property .................................... 32

Conclusion ....................................................... 37

Federal Rule of Appellate Procedure 32(g) Certification

# Table of Authorities

Pursuant to "Blue Book" rule 10.7, the Government's citation of cases does not include "certiorari denied" dispositions that are more than two years old.

## Cases

*Carpenter v. Commissioner*,
  No. 3:13-CV-563 (SRU),
  2018 WL 1902583
  (D. Conn. Apr. 20, 2018) .......................... 16, 27

*Carpenter v. Koskinen*,
  692 Fed. Appx. 666 (2d Cir. 2017) ........... viii, 7

*Ciminelli v. United States*,
  142 S. Ct. 2901 (2022) .................................. 19

*De Almeida v. United States*,
  459 F.3d 377 (2d Cir. 2006) ........................... 33

*Demaree v. Pederson*,
  887 F.3d 870 (9th Cir. 2018) ......................... 34

*Fed. Trade Comm'n v. Moses*,
  913 F.3d 297 (2d Cir. 2019) ............................ 3

*Ferreira v. United States*,
  354 F. Supp. 2d 406 (S.D.N.Y. 2005) ............. 26

*Ganek v. Leibowitz*,
  874 F.3d 73 (2d Cir. 2017) ............................. 30

*Heck v. Humphry*,
   512 U.S. 477 (1994) ....................................... 15

*In re 650 Fifth Ave. & Related Properties*,
   830 F.3d 66 (2d Cir. 2016)............................. 17

*Jackson v. United States*,
   526 F.3d 394 (8th Cir. 2008) ......................... 26

*Lockhart v. Nelson*,
   488 U.S. 33 (1988) ......................................... 19

*Silverthorne Lumber Co. v. United States*,
   251 U.S. 385 (1920) ....................................... 16

*United States v. Bruno*,
   661 F.3d 733 (2d Cir. 2011).................... 19, 20

*United States v. Burgard*,
   551 F.2d 190 (8th Cir. 1977) ......................... 16

*United States v. Bursey*,
   801 Fed. Appx. 1 (2d Cir.), *cert. denied*,
   *Carpenter v. United States*,
   141 S. Ct. 820 (2020) ............................ 6, 7, 15

*United States v. Cardona-Sandoval*,
   518 F.3d 13 (1st Cir. 2008)
   (per curiam)........................................ 23, 24, 26

*United States v. Carpenter*,
   190 F. Supp. 3d 260 (D. Conn. 2016)............. 31

iv

*United States v. Carpenter,*
    494 F.3d 13 (1st Cir. 2007) ............................ 19

*United States v. Carpenter,*
    No. 3:13-CR-226 (RNC),
    2015 WL 9461496
    (D. Conn. Dec. 24, 2015) ................. 5, 6, 15, 28

*United States v. Coleman,*
    862 F.2d 455 (3d Cir. 1988) ........................... 20

*United States v. Comprehensive Drug Testing,*
    *Inc.,*
    621 F.3d 1162 (9th Cir. 2010) ....................... 34

*United States v. Davis,*
    578 F.2d 277 (10th Cir. 1978) ...................... 20

*United States v. Ford,*
    703 F.3d 708 (4th Cir. 2013) ......................... 20

*United States v. Ganias,*
    824 F.3d 199 (2d Cir. 2016)
    (en banc) ............................................... viii, 7, 30

*United States v. Garcon,*
    406 Fed. Appx. 366 (11th Cir. 2010) ............. 26

*United States v. Jacobson,*
    15 F.3d 19 (2d Cir. 1994) .............................. viii

*United States v. Lewis,*
    368 F.3d 1102 (9th Cir. 2004) ....................... 20

*United States v. Mahaffy*,
  693 F.3d 113 (2d Cir. 2012)...................... 20, 21

*United States v. Mauskar*,
  557 F.3d 219 (5th Cir. 2009) ......................... 20

*United States v. Paulus*,
  No. 20-6017,
  2021 WL 3620445
  (6th Cir. Aug. 16, 2021), *cert. denied*,
  142 S. Ct. 2646 (2022) .................................. 20

*United States v. Pearl*,
  324 F.3d 1210 (10th Cir. 2003) .................... 20

*United States v. Ponce*,
  947 F.2d 646 (2d Cir. 1991)........................... 30

*United States v. Robison*,
  505 F.3d 1208 (11th Cir. 2007) .................... 20

*United States v. Sabatino*,
  No. 07-2460-CR(L),
  2009 WL 248009
  (2d Cir. Feb. 3, 2009) ................................... 26

*United States v. Van Cauwenberghe*,
  934 F.2d 1048 (9th Cir. 1991) ...................... 26

*United States v. Weems*,
  49 F.3d 528 (9th Cir. 1995) ........................... 20

vi

*Universitas Educ., LLC v. Nova Group, Inc.*,
  No. 11 CIV. 1590 (LTS) (HBP), 2013 WL
  6123104 (S.D.N.Y. Nov. 20, 2013) ................ 31

*Universitas Educ., LLC v. Nova Grp., Inc.*,
  No. 11 CIV. 1590 (LTS) (HBP), 2014 WL
  3883371 (S.D.N.Y. Aug. 7, 2014) .................. 31

*Yanez-Marquez v. Lynch*,
  789 F.3d 434 (4th Cir. 2015) .......................... 16

*Zurcher v. Stanford Daily*,
  436 U.S. 547 (1978) ....................................... 29

## Statutes

28 U.S.C. § 1291 ................................................ viii

28 U.S.C. § 1292 ................................................ viii

28 U.S.C. § 2255 ............................... 12, 21, 23, 25

## Rules

Fed. R. App. P. 31 ................................................ 3

Fed. R. App. P. 4 .......................................... viii, x

Second Circuit Local Rule 31.2 .......................... 3

Fed. R. Crim. P. 6 .............................................. 17

Fed. R. Crim. P. 41(g) ................................*passim*

## Supplementary Statement of Jurisdiction

With respect to the cross-appeal, in addition to the facts noted in the government's opening brief, the following facts are relevant: After the district court granted, in part, the plaintiffs-appellees' motion for return of documents on March 15, 2022, and then denied their motion for reconsideration on April 26, 2022, the plaintiffs-appellees filed a timely notice of cross-appeal on May 11, 2022. *See* Joint Appendix ("JA") 14 (Doc. No. 116); JA86–JA87; Fed. R. App. P. 4(a)(1)(B). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) for orders granting injunctions, or under the collateral order doctrine under 28 U.S.C. § 1291.

To the extent plaintiff-appellee Grist Mill Capital LLC ("GMC") suggests that this Court's jurisdiction is proper as a restoration of jurisdiction from the earlier appeal to this Court in the Internal Revenue Service ("IRS") *Bivens* case, *see* GMC Br. at 6, that suggestion is misplaced. In that prior appeal, No. 16-1036, this Court remanded for additional proceedings in light of new facts and this Court's then-recent decision in *United States v. Ganias*, 824 F.3d 199 (2d Cir. 2016) (en banc). *See Carpenter v. Koskinen*, 692 Fed. Appx. 666 (2d Cir. 2017). At the conclusion of this Court's remand order, the panel noted that it would retain jurisdiction over any subsequent appeal pursuant to *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994), and that the

viii

"restoration of jurisdiction will be automatically triggered by a letter from any party seeking review of the district court's actions on remand, submitted to the Clerk of the Court within fourteen days of the district court's decision." *Carpenter v. Koskinen*, 692 Fed. Appx. at 667.

This "restoration" option does not support jurisdiction here. Centrally, of course, although that earlier appeal was filed on behalf of government defendants to challenge the district court's order under Rule 41(g), this is not the same case. The earlier appeal was filed by the IRS agents who were defendants in the IRS *Bivens* action, then pending in the district court that challenged the 2010 search. *See Carpenter v. Shulman*, No. 3:13-CV-563 (SRU) (D. Conn). The defendants in the instant *Bivens* action, *Carpenter v. Allen*, No. 3:14-CV-741 (SRU) (D. Conn.), are the Department of Labor ("DOL") agents who conducted the 2011 search. They were not parties to the IRS *Bivens* action and thus not parties to the prior appeal to this Court.

In any event, it is far too late to invoke this Court's jurisdiction for an appeal in the IRS *Bivens* case, either as a restoration of the earlier appeal or as a new appeal. Under the terms of this Court's summary remand order, jurisdiction could be restored by submission of a letter "within fourteen days of the district court's decision" on remand. There has been no such submission to this Court's docket in the IRS *Bivens* appeal (No.

ix

16-1036), much less a submission within fourteen days of the district court's order, which in that action entered in 2021.

Similarly, any new appeal of the district court's Rule 41(g) order in the IRS *Bivens* would be time barred. In that case, the district court entered a final order on the Rule 41(g) issues on July 14, 2021, and entered final judgment on July 23, 2021. *See Carpenter v. Shulman*, No. 3:13-CV-563 (SRU) (D. Conn.) (Doc. Nos. 183, 184); *see also* Special Appendix ("SA") 6 (describing proceedings in the IRS *Bivens* action). Neither Daniel Carpenter nor GMC filed a notice of appeal from the district court's ruling or judgment in that case, much less within 60 days. *See* Fed. R. App. P. 4(a)(1)(B) (notice of appeal in civil case must be filed within 60 days when one of the parties is a federal officer).

x

**Statement of Issues**
**Presented for Review**

I. Whether the district court abused its discretion when it ordered, under Federal Rule of Criminal Procedure 41(g), the government to destroy certain materials—which it had lawfully seized pursuant to a search warrant and a grand-jury subpoena in connection with a criminal prosecution of plaintiff Daniel Carpenter—despite the government's continuing need for the property to defend against Carpenter's pending collateral attacks on his criminal convictions, to preserve evidence for a potential retrial should those attacks succeed, and to defend against the pending *Bivens* claims below.

II. Whether equitable considerations under Rule 41(g) authorized the district court to order the government to destroy seized property under Rule 41(g) once its continuing need for the property has ended, rather than return the property to GMC, an entity that Carpenter controlled and used to carry out the STOLI scheme, where the seized documents facilitated the fraud and contain personal information of dozens of private individuals.

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket Nos. 22-1057(L)
## 22-1061(Con)

––––

DANIEL E. CARPENTER, GRIST MILL CAPI-
TAL LLC,

*Plaintiffs-Appellees-Cross-Appellants,*

-vs-

LYNN ALLEN, CHERI GARCIA,
TIMOTHY CORSI,

*Defendants-Appellants-Cross Appellees.*

––––

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF CONNECTICUT

## RESPONSE AND REPLY BRIEF FOR THE
## DEFENDANTS-APPELLANTS-CROSS-APPELLEES

## Preliminary Statement

In this case, the district court granted, in part, the plaintiffs-appellees' motion for return of property under Federal Rule of Criminal Procedure 41(g) and ordered the government to destroy certain documents that it had seized during a criminal investigation of plaintiff-appellee Daniel

Carpenter. The government's opening brief explained that the district court abused its discretion in ordering the government to destroy those documents because the government needs them to defend against Carpenter's pending attacks on his convictions and to preserve evidence for a potential retrial should those attacks succeed.

Plaintiff-appellee GMC's brief in response and in support of its cross-appeal does nothing to undermine that conclusion.[1] Instead, GMC raises a

---

[1] Carpenter—as distinct from GMC—has waived any arguments on appeal. Although Carpenter joined in the notice of appeal filed by GMC, *see* JA86, is represented by the same lawyer who is representing GMC, *see* Doc. No. 34, and joined GMC's scheduling letter setting a due date for its response brief, *see* Doc. No. 54, he did not file a brief on appeal, either in response to the government's appeal or in purported support of his cross-appeal. GMC filed its opening brief on schedule, and although the text of the docket entry indicates the brief was filed on behalf of both GMC and Carpenter, Doc. No. 64, the brief itself makes clear that it was filed only on behalf of GMC—and not Carpenter. *See, e.g.*, GMC Br. at 6, 8 ("Statement of the Case for Grist Mill Capital"), 10 (seeking return of "Grist Mill Capital's . . . property"), 25 ("Grist Mill Capital's Response to Government's Issues on Appeal"). (It also bears noting that the brief is signed by counsel on behalf of another entity, Grist Mill Partners, LLC, which is not a party to this appeal. GMC Br. at 42.)

2

host of scattered arguments about the propriety of the search and the history of this case. But as set forth below, all of GMC's arguments are without merit. GMC's response arguments ignore settled law (including the law of this case), or are irrelevant to whether the court abused its discretion in this case.

With respect to its cross-appeal, GMC argues merely that Rule 41(g) does not authorize the destruction of property. That issue is only relevant, however, if this Court rejects the government's

---

Because Carpenter and GMC are essentially the same for purposes of this case, *see infra* at 31, the fact that Carpenter has not filed a brief is of little moment to the issues presented. Nevertheless, given Carpenter's failure to file a brief here, this Court should dismiss Carpenter's cross-appeal, and preclude Carpenter from appearing at argument or pursuing any claims or arguments that are distinct from those pursued by GMC. *See* Local Rule 31.2(d) ("Failure to File. The court may dismiss an appeal or take other appropriate action for failure to timely file a brief or to meet a deadline under this rule."); Fed. R. App. P. 31(c) ("If an appellant fails to file a brief within the time provided by this rule, . . . an appellee may move to dismiss the appeal. An appellee who fails to file a brief will not be heard at oral argument unless the court grants permission."); *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 302 (2d Cir. 2019) (dismissing co-appellant's appeal pursuant to Local Rule 31.2(d) for failing to file a brief).

3

argument on its appeal. But even on the merits, GMC's argument is misplaced. Although the government argues that the district court erred in ordering it to destroy the documents, that is only because the government still needs the documents. Once the government no longer has a continuing and legitimate need for the documents, there is nothing in equity that should preclude a district court from ordering the destruction (rather than return) of documents, particularly here where the documents were used to facilitate the fraud and contain personal information of dozens of private individuals.

For all these reasons, this Court should vacate the district court's order to destroy the documents.

## Statement of the Case

The government's opening brief provided an overview of the lengthy and complicated procedural history of this case. This history, as related in the Statement of the Case, included a description of the following:

- The criminal investigations into Carpenter, Defs. Br. at 4–7;

- The prosecution and conviction of Carpenter, and the affirmance of his convictions on appeal by this Court, *id.* at 7–8;

4

- The pending challenges to Carpenter's criminal convictions, *id.* at 9;

- The two *Bivens* actions filed by Carpenter and GMC, as well as the Rule 41(g) motions that accompanied each *Bivens* action, and the resolution of the Rule 41(g) motion against the DOL agents that resulted in this appeal, *id.* at 10–14.

In addition to these facts, and in response to GMC's brief, the government provides the following additional clarifying facts:

## A. Carpenter's motion to suppress, and this Court's affirmance of the denial of that motion

In Carpenter's criminal case, prior to trial, he moved to suppress the evidence seized from the 2010 and 2011 searches, claiming, among other things, that the search warrants were overbroad, lacked particularity, and were defective because the affidavit was not attached to the warrant. *See United States v. Carpenter*, No. 3:13-CR-226 (RNC), 2015 WL 9461496, *1, *4 n.4 (D. Conn. Dec. 24, 2015); *see also* SA10 (describing Carpenter's motion to suppress).

The district court (Robert N. Chatigny, J.) denied the motion, finding that the warrants were "sufficiently particularized" and not overbroad. *Carpenter*, 2015 WL 9461496, *4–*5; SA10. The

5

court further concluded that "any failure to attach the search warrant affidavits does not render the warrants defective." *Carpenter*, 2015 WL 9461496, *4 n.4; SA10.

After Carpenter was convicted and sentenced, he appealed and challenged, among other things, the district court's denial of his motion to suppress. *See United States v. Bursey*, 801 Fed. Appx. 1, 3 (2d Cir.), *cert. denied*, 141 S. Ct. 820 (2020). He raised the same issues about the searches on appeal, claiming that the 2010 and 2011 search warrants were overbroad, lacked particularity, and were defective. *See United States v. Bursey*, No. 19-70 (2d Cir.) (Doc. No. 56 at 32–58 (Carpenter's Brief on Appeal)).

This Court rejected these challenges to the search warrants. *Bursey*, 801 Fed. Appx. at 3. ("Carpenter argues that the district court erroneously denied his motion to suppress evidence seized on the basis of facially defective search warrants. We disagree."). The Court noted that "[b]oth warrants were based on detailed affidavits that clearly described the crimes in question, the places to be searched, and the items to be seized." *Id.* at 4. The Court further held that "the agents' reliance on [the warrants] was reasonable" and that the good-faith exception barred any claim that the agents relied on a defective warrant. *Id.*

Carpenter filed a petition for a writ of certiorari, and the Supreme Court denied that petition

6

in November 2020. *Carpenter v. United States*, 141 S. Ct. 820 (2020).

## B. The two separate *Bivens* actions

Carpenter and GMC filed two separate *Bivens* actions: one against the IRS agents who conducted the 2010 search, and another against the DOL agents who conducted the 2011 search. *See* Defs. Br. at 10–14. Both *Bivens* cases challenged the conduct of the respective searches and both contained a request for return of property under Rule 41(g). *See id.* at 10–11.

In the first action, against the IRS agents, the government filed an appeal to challenge an interim ruling granting the plaintiffs' Rule 41(g) motion. *See Carpenter v. Shulman*, No. 3:13-CV-563 (SRU) (D. Conn.) (Doc. No. 64). That appeal, docketed in this Court under No. 16-1036, ultimately ended in 2017 with an order remanding the case for further proceedings in light of new facts and this Court's decision in *United States v. Ganias*, 824 F.3d 199 (2d Cir. 2016) (en banc). *See Carpenter v. Koskinen*, 692 Fed. Appx. 666 (2d Cir. 2017).

On remand in the IRS *Bivens* action, after a stay during the criminal proceedings against Carpenter, the parties filed a joint status report indicating that there were still pending disputes on the plaintiffs' Rule 41(g) motion as applied to 29 items. *See* SA5; JA120 (joint status report). In

7

March 2021, the district court issued an order to show cause why those documents should not be returned. *See* SA6 (describing order). After a hearing, on July 14, 2021, the court ordered the government to destroy two items and denied the plaintiffs' motion as moot with respect to the remaining items because the IRS did not have possession of those items. *See* SA6 (describing order). The court entered final judgment on July 23, 2021, *see* SA6, and the IRS defendants subsequently notified the court that the IRS had destroyed the documents it was ordered to destroy and that it no longer had possession of any other documents from the 2010 search. *Carpenter v. Shulman*, No. 3:13-CV-563 (SRU) (Doc. No. 185). Neither Carpenter nor GMC filed a notice of appeal from the district court's ruling or judgment in that case.

Meanwhile, the Rule 41(g) proceedings in the DOL *Bivens* action—this case—continued apace. Like in the IRS *Bivens* action, the court entered an order to show cause in the DOL *Bivens* action in March 2021. *See* SA6 (describing order); JA26 (order). After further briefing and hearings, the court entered the orders at issue in this appeal.

In short, although the Rule 41(g) issues overlapped in the two *Bivens* actions, they arose in separate cases. And because the IRS no longer has any documents from its search, the only remaining issues at this juncture arise from the

8

resolution of the Rule 41(g) motion in the DOL *Bivens* case.

Nevertheless, throughout its brief, GMC conflates the two actions, treating them as part of the same case. To take but a few examples (beyond the argument in its jurisdictional statement, GMC Br. at 6, *see supra*, at viii): GMC claims the "instant action commenced on April 19, 2013," and then states "[o]n July 7, 2014, in the present action, the Government filed a 'Motion to Dismiss or, Alternatively, for Summary Judgment.'" *Id.* at 11. Both of those events, however, were in the IRS *Bivens* action, not in the "instant" DOL *Bivens* action. *See Carpenter v. Shulman*, No. 3:13-CV-563 (SRU) (Doc. Nos. 1, 38). GMC also describes the proceedings in the IRS *Bivens* action (and the interim appeal), referring to the parties in that appeal and action as the parties in this appeal. *See* GMC Br. at 11–18. The instant appeal, however, is from *Carpenter v. Allen*, No. 3:14-CV-741 (SRU) (D. Conn), and the individual defendants in this case were not parties to the prior IRS *Bivens* action or the appeal in that action. Finally, GMC purports to describe the "current" status of the Rule 41(g) dispute by reference to the joint status report filed in 2020 in the IRS *Bivens* action. In so doing, GMC claims that the government's position on many documents was that the court had no jurisdiction over them. GMC Br. at 15–16. More completely, however, the government's

9

position in the IRS *Bivens* case was that most of the Rule 41(g) dispute was *moot* because—as the court eventually concluded—the IRS no longer had possession of the documents. *See* SA6. The government has not argued, in this DOL *Bivens* case, that the district court lacks jurisdiction over the materials in dispute.

## Summary of Argument

I. The district court abused its discretion in granting, in part, the plaintiffs' Rule 41(g) motion and ordering the government to destroy the seized materials because the government has a continuing and legitimate need to retain the documents as evidence should any of Carpenter's pending challenges to his convictions result in a new trial and to defend those challenges themselves.

GMC's arguments in response do not undermine this conclusion. *First*, the government properly seized the documents by lawful search warrants. Carpenter previously challenged the validity of the search warrants in his criminal case, but the district court—and this Court on appeal—upheld the validity of the searches in this case. And because the searches were lawful, the government properly obtained some of those documents via subpoena from a third-party custodian who had control of them. *Second*, the government has a continuing need for the documents as

10

potential evidence in a new trial. The Double Jeopardy Clause would not bar a retrial of Carpenter if his conviction were vacated for the purported errors such as those he has raised in his habeas petition and other post-conviction motions. Additionally, the government also needs the documents to respond to Carpenter's multiple collateral challenges themselves.

*Third*, the government's position on return of the documents has always been the same: once Carpenter's case is over—including all challenges that might invalidate his conviction—the government's need for the documents will end and they can be returned to the lawful owner or destroyed. *Fourth*, the district court did not erroneously conflate the return of GMC's property with Carpenter's criminal case. To begin, GMC has never established a lawful right to the seized property. But putting that aside, the district court did not err by failing to distinguish GMC from Carpenter. GMC and Carpenter jointly moved the district court for the return of the same property, and GMC is essentially the alter ego of Carpenter, who was convicted.

II. Rule 41(g) authorized the district court to destroy the seized materials if the government no longer had a legitimate need for them as evidence. Although the government argues that the court abused its discretion in ordering it to destroy the documents, that is only because the government

11

still needs the documents as evidence. Once that
need ends, the district court could reasonably con-
clude that equitable considerations in this case
warrant the destruction of the documents rather
than their return because the documents were
used to facilitate the fraud and contain personal
information of dozens of private individuals. Such
information should not be returned to GMC—
which is controlled by Carpenter—who used that
personal information to perpetuate his fraud.

## Argument

### I. The district court abused its discretion by granting the Rule 41(g) motion.

As set out in the government's opening brief, a
Rule 41(g) motion is properly denied and the gov-
ernment may retain seized property once a crim-
inal case is over if it has a continuing and legiti-
mate need for that property as evidence. *See* Defs.
Br. at 17–18. Applying that standard to this case,
the government demonstrated that it has a con-
tinuing and legitimate need to retain the seized
material as evidence should any of Carpenter's
pending challenges to his convictions result in a
new trial (or further restitution proceedings).
Those challenges include a petition under 28
U.S.C. § 2255 to vacate his conviction, a motion to
dismiss, a motion for release of grand jury tran-
scripts, and a challenge to the restitution order,
which has not yet been finalized. *See id.* at 19–25.

12

In addition, the government demonstrated that it needs to retain the seized materials to defend against Carpenter's challenges themselves and to defend the government officials in the pending *Bivens* action below, which claim, among other things, that agents exceeded the scope of the search warrants, that the government withheld *Brady* and *Jencks* material, and that the government withheld exculpatory evidence from and lied to the grand jury. *See id.* at 25–29.

In response, GMC concedes that the government may retain seized property once a criminal case is over if the government demonstrates a "legitimate reason" to retain the property. GMC Br. at 31–32; *see also id.* at 29–30 ("[A] Rule 41(g) motion is properly denied if . . . the Government's need for the property as evidence continues."). GMC also correctly observes that "a Rule 41(g) motion is properly denied if the [moving party] is not entitled to lawful possession of the seized property[.]" *Id.*

Nonetheless, GMC argues that that the seized documents should be returned because, according to GMC, (A) the documents were unlawfully seized pursuant to invalid search warrants and an unlawful grand jury subpoena; (B) the government does not have a reason to retain the documents because the Double Jeopardy Clause bars a retrial of Carpenter, and the pending *Bivens* action is not a reason to retain them; (C) the

13

government previously promised to return the documents; and (D) the court erroneously conflated Carpenter with GMC—a purportedly innocent victim of the searches. These arguments are without merit.

## A. The government properly seized the documents from 100 Grist Mill Road by search warrant and subpoena.

GMC's principal argument is that the seized material must be returned because the IRS and DOL unlawfully seized the property in 2010 and 2011 pursuant to invalid search warrants, and that the government's grand jury subpoena to obtain boxes from Halloran & Sage LLP ("Halloran") was also unlawful. *See, e.g.*, GMC Br. at 2–4, 8, 10, 34–37, 39. More specifically, GMC argues that the search warrants were overbroad, lacked particularity, and were defective because the affidavit was not attached to the warrant. In addition, GMC claims the searches were executed improperly because they continued past 10:00 p.m. (even though they began during the day). *See id.* at 2, 8, 10, 34–39. GMC further argues that because the 2010 search was unlawful, the grand jury subpoena served on Halloran for several boxes that the IRS had returned was also unlawful. *See id.* 2–4, 8, 10, 34–37, 39. GMC's arguments are without merit and largely foreclosed by this Court's decision in Carpenter's criminal appeal.

14

*First*, with respect to the search warrants, Carpenter raised most of these same arguments in his motion to suppress in his criminal case. The district court rejected these arguments. *See Carpenter*, 2015 WL 9461496, *3–*7. When Carpenter challenged that decision on appeal, this Court affirmed the denial of his suppression motion, *Bursey*, 801 Fed. Appx. at 3, and the Supreme Court denied certiorari, *Carpenter*, 141 S. Ct. at 820. Accordingly, in light of this Court's prior decision in Carpenter's criminal case, GMC's claim that the searches were unlawful are without merit.[2]

To be sure, Carpenter's claim that the search unlawfully extended past 10:00 p.m.—an issue he flagged in his criminal case but did not raise as a separate claim—is still pending in the *Bivens*

---

[2] GMC states that the district court below found that GMC's "property was unlawfully seized in . . . unlawful" raid[s.]" GMC Br. at 1–2. This is a misreading of the record. The district court never found the searches were unlawful and never characterized the searches as raids. To the contrary, the district court expressly noted that in the criminal case, Judge Chatigny rejected Carpenter's arguments that the warrants were defective. *See* SA10. The district court also expressly dismissed GMC's Fourth Amendment claims challenging the search warrants—in both *Bivens* cases— as barred under *Heck v. Humphry*, 512 U.S. 477 (1994). *See* SA4, SA8.

15

action below. *See* JA19 (Complaint ¶ 15); JA34–JA40; SA8. Nonetheless, this argument is without merit. The Rule 41 requirement that a warrant be executed in the "daytime" is satisfied as long as the search is begun between 6:00 a.m. and 10:00 p.m., even if the search extends past 10:00 p.m. *See, e.g., Yanez-Marquez v. Lynch*, 789 F.3d 434, 466 n.19 (4th Cir. 2015) ("The relevant inquiry in determining when a search warrant was executed is the time at which the search began, not when it ended. ... [I]t is generally recognized that law enforcement officers who properly execute a daytime warrant between the hours of 6:00 a.m. and 10:00 p.m., may extend their search into the nighttime hours."); *United States v. Burgard*, 551 F.2d 190, 193 (8th Cir. 1977) (citing cases) ("Searches which began during daytime and continued into the night have been held not to violate the rule."). Indeed, the district court rejected GMC's similar argument in the IRS *Bivens* case. *See Carpenter v. Commissioner*, No. 3:13-CV-563 (SRU), 2018 WL 1902583, *16 n.44 (D. Conn. Apr. 20, 2018).

*Second*, because the 2010 search was valid, GMC's argument that the grand jury subpoena was unlawful also fails. GMC claims that the grand jury subpoena was unlawful under *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920), because "'the Supreme Court has long rejected the notion that the Government can

16

circumvent the exclusionary rule by using lawful processes to obtain evidence that it previously seized illegally.'" GMC Br. at 4 (quoting *In re 650 Fifth Ave. & Related Properties*, 830 F.3d 66, 105–06 (2d Cir. 2016)). But because the search was lawful (as this Court has already held), the government properly used a subpoena to obtain a subset of those documents from their then-current custodian, Halloran. *Silverthorne* is inapplicable.[3]

*Third*, even if this Court were to overrule its prior decision and find that the searches were unlawful, GMC has failed to show that this would entitle it to return of the documents under Rule 41(g). Indeed, the Advisory Committee notes to

---

[3] GMC repeatedly refers to the grand jury subpoena served on Halloran as a "secret subpoena," insinuating that the government engaged in nefarious conduct because it did not notify GMC or Carpenter about the subpoena. *See, e.g.*, GMC Br. at 2, 4, 8, 10, 33, 37–39. There was nothing nefarious about the government's conduct. As the face of the subpoena states, it was directed to Halloran for records in its possession, not to GMC or Carpenter. GMC Supplemental Appendix ("GSA") 23–GSA25. As such, the government was not obligated to inform GMC or Carpenter about the subpoena. Indeed, the government was prohibited from disclosing the subpoena to anyone but the listed recipient. *See* Fed. R. Crim. P. 6(e) (prohibiting government attorneys and others from disclosing matters occurring before the grand jury).

17

Rule 41 indicate that that provision "is not in-
tended to deny the United States the use of evi-
dence permitted by the fourth amendment and
federal statutes, even if the evidence might have
been unlawfully seized." Rule 41, 1989 Amend-
ments.

### B. The government still needs the seized materials for a potential retrial and to defend against Carpenter's challenges to his convictions.

Next, GMC challenges the government's con-
tinued need for the seized materials by arguing
that the Double Jeopardy Clause bars any retrial
of Carpenter and the pending *Bivens* action is not
a legitimate reason to retain them. *See, e.g.*, GMC
Br. at 4–5, 8, 22–23, 26–27. GMC is wrong for sev-
eral reasons; the government has a legitimate
and continuing need for the seized materials.

*First*, and centrally, the Double Jeopardy
Clause would not preclude a retrial of Carpenter
if he succeeds on any of his pending challenges to
his convictions. It is well-settled that "the Double
Jeopardy Clause's general prohibition against
successive prosecutions does not prevent the gov-
ernment from retrying a defendant who succeeds
in getting his first conviction set aside, through
direct appeal or collateral attack, because of some
error in the proceedings leading to conviction . . .
[unless the] conviction is reversed by an appellate

18

court on the sole ground that the evidence was insufficient to sustain the jury's verdict . . . ." *Lockhart v. Nelson*, 488 U.S. 33, 38–39 (1988). *See also United States v. Bruno*, 661 F.3d 733, 741 (2d Cir. 2011) ("[T]he Double Jeopardy Clause does not bar retrial of a defendant whose conviction is reversed because of an error in the trial proceedings. The principal exception to this rule is a reversal for insufficiency of the evidence." (citations omitted)); *United States v. Carpenter*, 494 F.3d 13, 26 (1st Cir. 2007) (rejecting Carpenter's double jeopardy argument with respect to his prior Massachusetts conviction because a "defendant has no double jeopardy claim when his conviction has been vacated for legal error" rather than "insufficiency of evidence").

Here, as the defendants detailed in their opening brief, Carpenter's pending challenges to his conviction do not rest on any purported insufficiency of the evidence, but rather turn on asserted legal error, such as his challenge to the Second Circuit's "right to control" theory premised on the Supreme Court's recent grant of certiorari in *Ciminelli v. United States*, 142 S. Ct. 2901 (2022), and challenges based on *Brady* violations. *See* Defs. Br. at 9.

But intervening changes in the law—such as a potential new ruling from the Supreme Court on the scope of the right to control theory—do not automatically preclude the government from

19

retrying a defendant under the Double Jeopardy Clause. *See, e.g.*, *Bruno*, 661 F.3d at 742–43 & n.2; *United States v. Ford*, 703 F.3d 708, 711 (4th Cir. 2013); *United States v. Weems*, 49 F.3d 528, 531 (9th Cir. 1995); *United States v. Pearl*, 324 F.3d 1210, 1214 (10th Cir. 2003); *United States v. Robison*, 505 F.3d 1208, 1225 (11th Cir. 2007).

Nor would the Double Jeopardy Clause preclude a retrial after resolution of a *Brady* claim. *See, e.g.*, *United States v. Lewis*, 368 F.3d 1102, 1107 (9th Cir. 2004) ("Other circuits . . . have explicitly held that defendants may not invoke the Double Jeopardy Clause [due to a prosecutor's alleged *Brady* violation]. We agree with the conclusions of those circuits."); *United States v. Coleman*, 862 F.2d 455, 458 (3d Cir. 1988); *United States v. Davis*, 578 F.2d 277, 280 (10th Cir. 1978); *United States v. Mauskar*, 557 F.3d 219, 232–33 (5th Cir. 2009); *United States v. Paulus*, No. 20-6017, 2021 WL 3620445 (6th Cir. Aug. 16, 2021), *cert. denied*, 142 S. Ct. 2646 (2022). As those cases make clear, the remedy for a *Brady* violation is a new trial. *See, e.g., Lewis,* 368 F.3d at 1107; *Davis*, 578 F.2d at 280 ("[T]he most an invocation of *Brady* could accomplish would be the ordering of a new trial in which the withheld information is fully disclosed.").

In its response, GMC claims that *United States v. Mahaffy*, 693 F.3d 113 (2d Cir. 2012) stands for the proposition that a *Brady* violation

20

bars retrial, but this argument rests on a mis-reading of that case. In the language that GMC quotes in its brief, *see* GMC Br. at 26, the *Mahaffy* Court made the unremarkable point that the Double Jeopardy Clause bars retrial if an appellate court determines the government's evidence at trial was legally insufficient. *See Mahaffy*, 693 F.3d at 123. That principle had no application in that case, however, because the Court found the evidence was sufficient to support the convictions. *Id.* at 123–27. Later in the opinion, to be sure, the Court found a *Brady* violation, but also expressly noted that the government could retry the case. *See id.* at 134–35. In other words, *Mahaffy* does not support GMC's claim that the Double Jeopardy Clause would bar retrial here.

*Second,* GMC's response (and its reliance on its Double Jeopardy Clause argument) ignores the government's other principal argument: that it needs to retain the seized documents to respond to Carpenter's challenges themselves. *See* Defs. Br. at 25–29. For example, in his § 2255 petition and other pending motions in the criminal case, Carpenter argues that the executing agents exceeded the scope of the search warrant, JA194, that he was denied access to *Brady* and *Jencks* Act material, JA196–JA217; JA250–JA259, and that the government withheld from the grand jury exculpatory evidence that the government seized during the two searches, JA130–JA153. To

21

respond to these pending claims—to show that the materials collected were within the scope of the warrant, to rebut any claim that the government failed to produce *Brady* and *Jencks* material that was in its possession, and to disprove any claim that it withheld exculpatory evidence from the grand jury—the government needs access to a complete set of the seized materials. Likewise, the government needs access to the seized materials to respond to any information the district court may require to finalize the restitution order and to address any other issues should he prevail on his pending appeal of the restitution order. GMC's brief does not respond to any of these legitimate needs.

*Third,* GMC's argument that the *Bivens* action is not a legitimate reason to retain the documents is unavailing. GMC argues that "[t]he notion that the Government agents could utilize the police power to obtain discovery for purposes of defending a civil action is Constitutionally outrageous." GMC Br. at 22–23. But the government here is not seeking "to obtain discovery" through police power. The government already obtained the documents through valid search warrants. As set forth in the defendants' opening brief, it would be not only costly and inefficient to return the documents and then engage in civil discovery for the very same documents, but also inadequate. *See* Defs. Br. at 27–28.

22

More importantly, the remaining claims in the DOL *Bivens* action overlap with claims in Carpenter's § 2255 petition: that the government seized evidence beyond the scope of the warrants. *See* SA8; JA10; JA194. As set forth in the defendants' opening brief, multiple Courts of Appeal and district courts have held that the government has a legitimate reason to retain seized property as evidence when a defendant seeks to collaterally attack his criminal conviction under § 2255. *See* Defs. Br. at 20–22 (collecting cases). GMC does not address this line of cases in its brief.

*Fourth*, GMC mistakenly claims that one case cited by the government, *United States v. Cardona-Sandoval*, 518 F.3d 13 (1st Cir. 2008) (per curiam), supports its position. *See* GMC Br. at 40–41. The government cited that case in its opening brief for the general proposition that a Rule 41(g) motion is properly denied if the government needs the property as evidence—a proposition that GMC agrees with. *See* Defs. Br. at 18; GMC Br. at 29–30. And in *Cardona-Sandoval*, there was no dispute about that proposition; in fact, the parties agreed that the seized property should be returned because the government no longer had a need for it. 518 F.3d at 15. The dispute in that case was about the *implementation* of that return and whether the government's statements supported its claim that it had returned or destroyed all relevant property. *Id.* at

23

15–18. Here, by contrast, there is no dispute on appeal about the implementation of a Rule 41(g) order; the question is whether such an order is proper at all. And on that question, *Cardona-Sandoval* does not help GMC.

### C. The government's statements during the prior IRS *Bivens* appeal do not support returning any property at this time.

In seeking the return of property, GMC claims that during oral arguments in the interlocutory appeal of the Rule 41(g) issues in the IRS *Bivens* action, government counsel promised to return the documents once the criminal case was final, and the government has not lived up to that promise. *See* GMC Br. at 17–18.

As an initial matter, as explained above, even though this appeal concerns Rule 41(g) issues, this is not the same case as the prior appeal in the IRS *Bivens* action. *See supra* at 7–10. Accordingly, the individual defendants in this case were not parties to that appeal, which was pursued on behalf of the IRS agents who were defendants in that case. Thus, as a legal matter, the statements made in that case do not bind the defendants in this action.

In any event, though, the government's position now is the same as it was then: as soon as this case is over—as soon as all of the collateral

24

challenges to Carpenter's convictions are resolved and thus the government no longer needs the seized materials—the documents can be returned to the lawful owner or destroyed. As the government lawyer explained at the time, once the case is done, the papers could be returned. *See* GMC Br. at 17–18 (quoting oral argument). At the time of the argument, of course, on June 15, 2017, Carpenter had not yet been sentenced for his conviction, much less pursued his appeal. Similarly, he had yet to file his challenge to the restitution order, his motion to dismiss for lack of jurisdiction, his motion for release of grand jury minutes or his petition under 28 U.S.C. § 2255. In short, his case was far from done in 2017, and still today, it is not yet done.

### D. The fact that GMC was not prosecuted or convicted is irrelevant to the issues here.

GMC argues that the seized materials should be returned to it because it is the rightful owner of those materials, and unlike Carpenter, it was never indicted or prosecuted. *See, e.g.*, GMC Br. at 1, 7, 25, 41. This argument is without foundation.

One foundational problem with GMC's argument is that it rests on the highly contested premise that the seized materials belong to GMC. GMC acknowledges that it must show a right to

25

lawful possession of the property to prevail under Rule 41(g). *See id.* at 29–30; *see also Ferreira v. United States*, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005); *United States v. Sabatino*, No. 07-2460-CR(L), 2009 WL 248009, *1 (2d Cir. Feb. 3, 2009); *Cardona-Sandoval*, 518 F.3d at 15; *Jackson v. United States*, 526 F.3d 394, 396–97 (8th Cir. 2008); *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991); *United States v. Garcon*, 406 Fed. Appx. 366, 369 (11th Cir. 2010). GMC purports to meet this standard by baldly asserting that "[t]here is no dispute that the property belongs to" it. *Id.* at 32.

In fact, the record below provides no support for this naked assertion that there is "no dispute" about the ownership of the documents. The documents at issue were seized in 2010 and 2011 from an office building at 100 Grist Mill Road in Simsbury, Connecticut, *see* SA1–SA2, and in the years of litigation since that time, various entities and individuals have claimed ownership and rights to the seized materials. For example, immediately after the first search, a company called "Benistar Admin Services, Inc." ("BASI") identified itself as the "owner and custodian" of all property seized during the execution of the search warrant, a claim that Carpenter's wife (who was an officer of BASI) confirmed in her deposition testimony in the IRS *Bivens* action. *See Benistar Admin. Servs., Inc.*, No. 3:10-MC-60 (AVC) (D. Conn.)

26

(Doc. No. 1 at 4); *Carpenter v. Shulman*, No. 3:13-CV-563 (SRU) (Doc. No. 133-3 at 33–34). At about the same time, GMC and 15 other individuals and entities filed a second Rule 41(g) action seeking return of the same property. *See Pettibone Tavern, LLC v. IRS*, No. 3:10-MC-64 (AVC) (D. Conn.) (Doc. No. 1 at 1–2); GSA33–GSA35. Carpenter himself, who was the manager and sole officer of GMC, testified that he had no role at BASI and claimed that only 40 of the 322 seized boxes belonged to GMC, with the rest belonging to BASI. *See Carpenter v. Shulman*, No. 3:13-CV-563 (SRU) (Doc. No. 129-6 at 7); *Carpenter v. Commissioner*, 2018 WL 1902583, *9.

Even in the more recent litigation, there is continued uncertainty about the rightful owner of the seized materials. When the government raised this issue below, *i.e.*, that Carpenter and GMC had not established their right to possession of the seized documents, the district court noted that the plaintiffs (GMC and Carpenter) had "not responded to those particular arguments and have provided no additional details" on the items they wanted returned.[4] *See* SA15–SA16; *see also* SA16 (noting that in criminal case, Judge Chatigny had concluded that Carpenter had not

---

[4] The district court granted the Rule 41(g) motion without resolving the disputed claims of ownership. *See* SA16–SA17.

27

established standing to demand return of most of the documents); *Carpenter*, 2015 WL 9461496, *7. Similarly, the evidence that GMC points to in its brief to this Court does not support its ownership claim to all of the seized documents.[5] For example, GMC points to an affidavit that was submitted in connection with the second Rule 41(g) action filed in 2010. *See* GMC Br. at 32–23. That affidavit, however, describes several individuals and entities whose property was taken, not just GMC's property. GSA33–GSA35.

In short, the record below does not establish a lack of dispute that GMC is entitled to lawful possession of the seized property. As such, GMC has not made the threshold showing that it is entitled return of all of the seized documents.

GMC's failure on this issue is beside the point, however. Even if GMC had shown that it is entitled to lawful possession of the documents, it does not follow that the court should have treated its request for return of documents separately from Carpenter's or treated them differently solely because GMC, unlike Carpenter, had never been indicted or convicted of fraud.

---

[5] Because Carpenter has elected not to participate in this appeal as a separate party, he has waived any arguments that would be distinct from those presented by GMC. *See supra* at fn. 1.

28

To begin, GMC and Carpenter litigated this case in tandem below. They jointly moved for the return of the same property before the district court, making no attempt to distinguish who was entitled to the property or which property belonged to GMC and which property belonged to Carpenter. *See* SA15–SA16; JA23; JA113–JA115; JA120–JA126; *Carpenter v. Allen*, No. 3:14-CV-741 (SRU) (D. Conn.) (Doc. No. 75). They did not argue, as GMC argues now, that equity required a different result for the purportedly innocent GMC. It is only now, on appeal, that Carpenter appears to have abandoned his claim to the property.

But even if GMC had some interest in the documents separate from Carpenter, the fact that GMC was never indicted or prosecuted does not matter. It is well settled that search and seizure warrants may be issued for property in the possession of persons who are not suspected of criminal activity. *See, e.g., Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." (footnote omitted)); *id.* at 559 ("[I]t is untenable to conclude that property may not be searched unless its occupant is reasonably suspected of crime and

29

is subject to arrest."); *Ganek v. Leibowitz*, 874 F.3d 73, 86 (2d Cir. 2017) ("[P]robable cause to search a location . . . for evidence of a crime does not require probable cause to think that the person whose premises is to be searched is himself a knowing participant in the criminal activity under investigation. It requires only probable cause to think that evidence of a crime—by whomever committed—will be found in the place to be searched."); *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir. 1991) ("[I]f there is probable cause to believe that particular things are located on particular property, then it is not necessary that the owner of the property be suspected of crime.").

Likewise, the plain language of Rule 41(g) governing the return of property simply refers to *any* "person aggrieved by a search," and does not provide different standards for indicted persons versus non-indicted persons. *See, e.g.*, *United States v. Ganias*, 824 F.3d 199, 201, 211, 218–20 (2d Cir. 2016) (en banc) (in case where original search warrant served on accountant of suspected target, court noted that accountant could have filed motion for return of property under Rule 41(g)). The law requires courts to consider whether the government has a continuing need for the property as evidence, without making a distinction between property belonging to persons who have been prosecuted and persons who have not. In other words, for both the initial search and the

30

Rule 41(g) motion, GMC's status as a non-indicted party is legally irrelevant.

Finally, and most significantly, the fact that GMC was not separately indicted in this matter is irrelevant because, for all practical purposes, Carpenter *was* GMC. *See* SA2 (noting that Carpenter is the manager and sole officer of GMC); *United States v. Carpenter*, 190 F. Supp. 3d 260, 273 (D. Conn. 2016) ("Mr. Carpenter acknowledged at trial that he controlled GMC[.]"); *Universitas Educ., LLC v. Nova Group, Inc.*, No. 11 CIV. 1590 (LTS) (HBP), 2013 WL 6123104, *3 (S.D.N.Y. Nov. 20, 2013) ("Carpenter is the only individual with an ownership interest, membership interest, or beneficial interest, direct or indirect, in Grist Mill"); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CIV. 1590 (LTS) (HBP), 2014 WL 3883371, *2–*3 (S.D.N.Y. Aug. 7, 2014) (finding that GMC was one of a number of "shell entities" that Carpenter used to hide assets and that GMC was wholly owned by Grist Mill Holdings, which Carpenter admitted was his "alter ego," and Caroline Financial Group, Inc., both of which were wholly owned by Carpenter). Moreover, Carpenter's use of GMC was instrumental in carrying out the STOLI scheme for which he was convicted. *See Carpenter*, 190 F. Supp. 3d at 273, 279–80, 287; *see also id.* at 273 (noting that Carpenter signed all documents on behalf on GMC). In short, the fact that some of the documents may

31

belong to GMC, which was not prosecuted, rather than its alter ego and sole controlling officer, who was prosecuted and convicted, is a distinction without a difference.

## II. As a matter of equity, the district court properly exercised its discretion to order the government to destroy—rather than return—the property.

In GMC's cross-appeal, it argues that the district court erred in ordering the government to destroy, rather than return, the seized documents because Rule 41(g) deals with the return of property rather than its destruction. *See* GMC Br. at 3, 7, 9, 23–25. This argument is without merit.

Two preliminary points on this question: *First*, the Court need not resolve this question at all. If the Court agrees with the government that the district court abused its discretion to grant the motion now, while the government still needs the documents, any dispute about the specific form of relief—whether return or destruction—is not yet ripe. In other words, this Court can leave to another day whether the district court may order destruction of documents in response to a Rule 41(g) motion.

*Second*, GMC's statement to the contrary notwithstanding, the parties are *not* in agreement on this point. GMC states that neither party sought the destruction of property and that the parties

32

agree that the property should not be destroyed.
*See* GMC Br. at 1, 42. That is an incomplete ex-
planation of the government's position. The gov-
ernment argued below that the district court
could order destruction of the property at a later
time, after the government's need for the docu-
ments as evidence had ended. JA73; *Carpenter v.
Allen*, No. 3:14-CV-741 (SRU) (Doc. No. 92). In
other words, while the government opposed de-
struction of the documents *now*, while it still
needs them as evidence, the government is not op-
posed to destruction of the documents once that
need is over.

Turning to the merits, and assuming this
Court reaches the issue, it should uphold the dis-
trict court's exercise of its equitable power to or-
der destruction of the documents in this case. As
this Court has explained, "[a] Rule 41(g) motion
is an equitable remedy that is available only
when there is no adequate remedy at law and the
equities favor the exercise of jurisdiction." *De Al-
meida v. United States*, 459 F.3d 377, 382 (2d Cir.
2006). Accordingly, a district court considering
such a motion should balance the equities to im-
pose a just result in each case. The Advisory Com-
mittee notes to the 1989 amendments to Rule
41(g) expressly state that "in some circumstances
. . . equitable considerations might justify an or-
der requiring the government to return or destroy
all copies of records that it has seized." Even the

33

case cited by GMC, *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1174 (9th Cir. 2010) (en banc), *overruled in part on other grounds as recognized by Demaree v. Pederson*, 887 F.3d 870, 876 (9th Cir. 2018) (per curiam), quotes this language and notes that destruction of property may be appropriate in a Rule 41(g) case. The Ninth Circuit did not list the circumstances in which such an order would be warranted, but instead provided that "[w]hat circumstances merit this remedy is left to the discretion of the district court[.]" *Id.*

In this case, the district court properly concluded that equitable considerations warranted destruction of the materials once the government's continued legitimate need for them as evidence has ended. At the very least, the district court did not abuse its discretion in reaching this conclusion.

*First*, as the district court correctly noted when it ordered the destruction of documents, Carpenter's criminal counsel had copies of all of the materials, which the government provided in discovery, and accordingly, the plaintiffs would not suffer any harm. *See* SA22; *see* JA71 (transcript of hearing). Although GMC argued that it needed access to the original documents, such as original copies of life insurance policies, the district court correctly noted that having an original policy is not necessary to making a claim on that policy; a

34

copy of the policy or just the policy number alone would suffice. *See* JA73. To date, GMC still has not articulated any legitimate harm from the seizure of the documents. Moreover, as the district court also observed, the seized documents included the policies that were fraudulently obtained from life insurance companies in the STOLI scheme for which Carpenter was convicted. JA72–JA73.

*Second*, and more importantly, the district court correctly observed that the "documents contain third parties' personally identifying information used by Plaintiffs to perpetuate a fraud, and prudence counsels in favor of not returning them." SA18. Judge Underhill's concerns echoed those of Judge Chatigny in the criminal case, who relied on that concern to deny Carpenter's post-conviction request to have unfettered access to discovery in his home:

> It is of concern to me that Mr. Carpenter has now been convicted of fraud, not just in this case, but previously . . . and the privacy interests of the individuals who have their personal information in their documents, which cannot be extracted, it seems, as well as the government's interest in maintaining the respect for law that could be eroded if Mr. Carpenter's request were granted and he had access to all of this material, I

35

think that the government has the better of the argument.

*Carpenter*, No. 3:13-CR-226 (RNC) (Doc. No. 312 at 22). Indeed, given these concerns, in sentencing Carpenter, Judge Chatigny included numerous conditions of supervised release that prohibit Carpenter from engaging in any for-profit business or acting in a fiduciary capacity. *Carpenter*, No. 3:13-CR-226 (RNC) (Doc. No. 466 at 3).

Those concerns still exist today. Accordingly, once the government's need for the documents has ended, the equitable considerations in this case warrant the destruction of documents containing personally identifying information of dozens of private citizens rather than returning them to GMC, which is controlled solely by Carpenter, a twice-convicted fraudster who is still on supervised release. Indeed, returning the documents to GMC would be inconsistent with Judge Chatigny's sentence, which prohibits Carpenter from engaging in any for-profit business or acting in a fiduciary capacity while on supervised release.

36

## Conclusion

For the foregoing reasons and the reasons set forth in the government's opening brief, the district court's ruling granting plaintiffs' Rule 41(g) motion and ordering the destruction of documents should be vacated. If the Court concludes that Rule 41(g) relief was properly granted, it should uphold the court's destruction order.

Dated: February 3, 2023

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY
DISTRICT OF CONNECTICUT

NEERAJ N. PATEL
ASSISTANT U.S. ATTORNEY

Sandra S. Glover
Assistant U.S. Attorney (of counsel)

37

**Federal Rule of Appellate Procedure 32(g)
Certification**

This is to certify that the foregoing brief complies with the 14,000-word limitation of Second Circuit Local Rule 28.1.1(a), in that the brief is calculated by the word processing program to contain approximately 8,805 words, excluding the items listed in Federal Rule of Appellate Procedure 32(f).


NEERAJ N. PATEL
ASSISTANT U.S. ATTORNEY

38