# 22-1057-cv(L), 22-1061-cv(XAP)

## United States Court of Appeals

*for the*

## Second Circuit

LYNN ALLEN, CHERI GARCIA, TIMOTHY CORSI,

*Defendants-Appellants-Cross-Appellees,*

– v. –

GRIST MILL CAPITAL LLC,

*Plaintiff-Appellee-Cross-Appellant,*

DANIEL E. CARPENTER,

*Plaintiff.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

## PETITION FOR REHEARING *EN BANC*

JONATHAN J. EINHORN, ESQ.,
ATTORNEY & COUNSELOR AT LAW
*Attorney for Plaintiff-Appellee-Cross-*
*Appellant Grist Mill Capital LLC*
129 Whitney Avenue
New Haven, Connecticut 06510
(203) 777-3777

CP COUNSEL PRESS     (800) 4-APPEAL • (326465)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...................................................................ii

RULE 35 STATEMENT .................................................................. 1

BACKGROUND.............................................................................. 4

ARGUMENT .................................................................................. 7

    I.    A SECOND TRIAL OF MR. CARPENTER IS BARRED BY THE DOUBLE JEOPARDY CLAUSE OF THE CONSTITUTION ................................................ 7

    II.    DECISIONS OF THIS COURT SUPPORT THE INNOCENT GMC OVER THE ILLEGAL SEIZURE OF PROPERTY BY THE GOVERNMENT ........................... 9

CONCLUSION ........................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Binday v. United States,*
    21-1241 (2022) ................................................................. 12

*Brewster v. Beck,*
    859 F.3d 1194 (9th Cir. 2017) ........................................ 12

*Burks v. United States,*
    437 U.S. 1 (1978) ............................................................. 7

*Carpenter v. Koskinen,*
    No. 3:13-cv-563 (SRU), 2015 U.S. Dist. LEXIS 72075
    (June 4, 2015) ................................................................. 6

*Ciminelli vs. United States,*
    21-1170 (2023) ........................................................... 7, 12

*Davis v. United States,*
    564 U.S. 229 (2011) ....................................................... 13

*Groh v. Ramirez,*
    540 U.S. 551 (2004) ....................................................... 13

*In re 650 Fifth Ave.,*
    934 F.3d 163 (2d Cir. 2019) ........................................ 5, 14

*In re Brenner,*
    6 F.2d 425 (2d Cir. 1925) ................................................. 9

*Kokesh v. S.E.C.,*
    581 U.S. 455 (2017) ......................................................... 8

*Lockhart v. Nelson,*
    488 U.S. 33 (1988) ........................................................... 8

*North Carolina v. Pearce,*
    395 U.S. 711 (1969) ......................................................... 7

*Silverthorne Lumber Co. v. United States,*
    251 U.S. 385 (1920) ..................................................... 3, 4

*United States v. Brennerman,*
    No. 17-cr-337 (RJS), 2022 U.S. Dist. LEXIS 234309
    (S.D.N.Y. Jan. 3, 2023) ............................................................... 11

*United States v. Edwardo-Franco,*
    885 F.2d 1002 (2d Cir. 1989) ........................................................ 2

*United States v. Olmeda,*
    461 F.3d 271 (2d Cir. 2006) .......................................................... 7

*United States v. Place,*
    660 F.2d 44 (2d Cir. 1981) ........................................................... 10

*United States v. Wey,*
    256 F. Supp. 3d 355 (S.D.N.Y. 2017) ......................................... 5

**Statutes & Other Authorities:**

U.S. Const., Amend. IV ................................................................. *passim*

Federal Rule of Criminal Procedure 28(j) ................................... 6

Federal Rule of Criminal Procedure 41(g) ................................ *passim*

## RULE 35 STATEMENT

The issue the Panel focused on, that a pending 2255 Petition by Mr. Carpenter in his criminal case is grounds for reversing Judge Underhill's 41(g) Ruling, deserves en banc reconsideration.

Moreover, the Panel's argument that the Government had a "legitimate need" for retaining the records seized, was based upon law outside of this Circuit, as it found specifically that "during the pendency of an ongoing criminal investigation or proceeding, the *defendant* bears the burden of demonstrating that the Government's retention of the seized property is unreasonable" (citing Third and Ninth Circuit cases).

Judge Underhill, after reviewing the long and tortured history of the Government's continuous refusal to release seized documents pursuant to Rule 41(g) addressed that issue and accurately noted that for the purposes of the 2255 Petition, only the documents seized and ultimately used as evidence at his trial would be admissible.

Moreover, if Mr. Carpenter is successful on his 2255 Petition, a new trial would be prohibited by Double Jeopardy or the Statute of Limitations. The Government has already had 14 years to review the

content of these 26 boxes and could have identified anything else of potential value if it so desired.

Indeed, even if a trial of Mr. Carpenter's criminal case was ordered, then, as Judge Underhill noted,

> "the government may not piggyback off a decade old warrant to withhold documents indefinitely without specifying a specific need for them, which it fails to do here". [1]

The Supreme Court and Courts of Appeal, including this Court, have emphasized repeatedly that…"Justice must satisfy the appearance of Justice." *United States v. Edwardo-Franco*, 885 F.2d 1002, 1005 (2d Cir. 1989). Neither Justice nor the "appearance" of Justice will be served if the Panel's Opinion is allowed to stand. This Court should grant *en banc* rehearing to correct the Panel's placing the burden of proof onto innocent parties who are the victims of an "illegal" seizure pursuant to Rule 41(g) and the Fourth Amendment.

The Panel also cites out-of-circuit law for its proposition that there is no requirement for the Government to demonstrate its need to use the

---

[1] And if the government needs any of these records (not already on record from his criminal trial), it can obtain them in the *Bivens* case by civil discovery.

seized materials at a potential retrial on a document-by-document basis (citing a Fifth Circuit case).

The Opinion conflates Mr. Carpenter as the "criminal defendant" in this *Bivens* action with the never-indicted or accused GMC which records show was never owned by Mr. Carpenter – but this appeal is about the return of the final 26 Boxes illegally seized by a facially unconstitutional and defective warrant in April of 2010 and then seized again by a secret *Silverthorne* subpoena. (see *Silverthorne Lumber Co. vs. United States*, 251 U.S. 385 (1920)). This *Silverthorne* subpoena was issued by the Government to secretly obtain certain boxes from GMC's attorneys that were described by GMC's manager Wayne Bursey when he filed an Emergency Motion in April of 2010, because the boxes contained policies that were to be sold to Credit Suisse and a German Pension Plan for $450,000,000.

*Silverthorne* subpoenas have been illegal in this Country for a century, after Justice Holmes famously stated so in *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920), that the unlawfully seized property in this case should not only <u>not</u> be used in Mr. Carpenter's

potential future trial, it should "not be used at all". *See Silverthorne* at 392.

GMC has never been accused, indicted, tried, or convicted of a crime. Yet the Panel erroneously shifted the burden of proof to that innocent party. This case cries out for a full *en banc* review of the Panel's Opinion as the decision conflicts with major precedents of the Supreme Court, the Second Circuit, and with the Fourth Amendment, as well as a plain reading of Rule 41(g).

Mr. Carpenter respectfully argues that the error of conflating his criminal cases with an innocent party's claim for the return of its illegally seized property under Rule 41(g), has led to a Ruling which deserves en banc reconsideration.

## BACKGROUND

Grist Mill Capital LLC (GMC), the Petitioner in this case, was formed as a Connecticut LLC in 2006. A cursory look at GMC's filings with the State of Connecticut will show no mention of Mr. Carpenter's name. Mr. Carpenter is not seeking the return of any of his property: it is GMC which has pursued this 41(g) return over the past 14 years.

4

The 14-year delay in this case is a separate Fourth Amendment violation in its own right. Moreover, it is clear that the Government knows the remaining boxes have nothing to do with Mr. Carpenter's criminal case because the Government's secret *Silverthorne* subpoena of May 2011 mentions the exact same boxes listed in the Bursey Affidavit given to Judge Covello in April 2010, and Mr. Carpenter's name is mentioned nowhere in the documents supporting the Government's unlawful raid of 2010 that were not attached or incorporated to the defective warrant.

GMC suffered the illegal seizure of its property in April 2010 based on a search warrant that never had the search warrant affidavit attached, and that search warrant in 2010 was far more constitutionally defective than the famous defective search warrants in *United States v. Wey*, 256 F. Supp. 3d 355 (S.D.N.Y. 2017) and *In re 650 Fifth Ave.*, 934 F.3d at163 (2d Cir. 2019).

As Judge Underhill noted in one of his several opinions ordering the return of GMC's property starting in June 2015:

> The plaintiffs, including un-indicted party GMC, allege that since the 2010 search, only four of the boxes have been returned. The Government alleges that "with the exception of

> two boxes," all other bankers' boxes "are now in the possession of Daniel Carpenter or his attorneys."
>
> The plaintiffs contest that characterization, arguing that the Government has provided copies of their files, as opposed to returning the original files themselves, which include business records and documents, client files, and privileged attorney-client communications related to a separate criminal matter against Carpenter in the U.S. District Court for the District of Massachusetts, *United States v. Daniel Carpenter,* 1:04–cr–10029 (GAO).

*Carpenter v. Koskinen*, No. 3:13-cv-563 (SRU); 2015 U.S. Dist. LEXIS 72075, *13-14 (June 4, 2015).

In a Rule 28(j) letter to this Court, the Government admitted in 2019 that there were boxes of evidence seized from Mr. Carpenter's private office (where Judge Chatigny ruled that he had a Right to Privacy) in 2010 and again from the law office of Halloran & Sage using the secret *Silverthorne* subpoena – and was used at Mr. Carpenter's trial, but it was only a "small" amount of evidence, so it should "not be a problem". (See AUSA Neeraj Patel's Rule 28(j) letter attached as Exhibit Four to Attorney Jonathan J. Einhorn's Rule 28(j) Letter to this Court, on file).

**ARGUMENT**

## I.     A SECOND TRIAL OF MR. CARPENTER IS BARRED BY THE DOUBLE JEOPARDY CLAUSE OF THE CONSTITUTION

The Double Jeopardy Clause prohibits a second trial of the

Defendant in certain situations:

> In essence, the Double Jeopardy Clause protects criminal defendants against three things: (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, (1969).

*United States v. Olmeda*, 461 F.3d 271, 279 (2d Cir. 2006).

If Mr. Carpenter's conviction is vacated based on *Ciminelli vs.*

*United States, 21-1170 (2023)*, then there is a question of the "insufficient

evidence" *Burks* exception in *Lockhart v. Nelson* cited by the Opinion to

erroneously conclude there will be a second trial for Mr. Carpenter:

> In *Burks v. United States,* 437 U.S. 1, (1978), we recognized an exception to the general rule that the Double Jeopardy Clause does not bar the retrial of a defendant who has succeeded in getting his conviction set aside for error in the proceedings below. *Burks* held that when a defendant's conviction is reversed by an appellate court on the sole ground that the evidence was insufficient to sustain the jury's verdict, the Double Jeopardy Clause bars a retrial on the same charge. The Double Jeopardy Clause is "designed to protect an individual from being subjected to the hazards of trial and

possible conviction more than once for an alleged offense."
Reflecting this principle, we held in *Burks* that the
prohibition against double jeopardy prevents retrial where a
State's evidence at trial is found insufficient. The *Burks* rule
is based on the time-honored notion that the State should be
given only "one fair opportunity to offer whatever proof it [can]
assemble." Unlike a finding of reversible trial error, which
traditionally has not barred retrial, reversal for evidentiary
insufficiency "constitute[s] a decision to the effect that the
government has failed to prove its case."

*Lockhart v. Nelson*, 488 U.S. 33, 44 (1988) (cit. omitted).

Because Mr. Carpenter has served his full sentence, he cannot be

"tried again" in order to be "punished" for a second time. But there are

other problems with the Government's possibility of a second trial. The

Government needs a new indictment and the Supreme Court's decisions

on the certainty of the Statute of Limitations precludes any such new

indictment for a new prosecution:

Statutes of limitations "se[t] a fixed date when exposure to
the specified Government enforcement efforts en[d]."
*Gabelli,* 568 U.S., at 448, 133 S.Ct. 1216. Such limits are
"'vital to the welfare of society'" and rest on the principle that
"'even wrongdoers are entitled to assume that their sins may
be forgotten.'"

*Kokesh v. S.E.C.,* 581 U.S. 455, 461 (2017).

8

Again, the Panel's Ruling, denying Petitioner's argument as to a Double Jeopardy potential upon a retrial, cites non-Circuit caselaw (to wit, the 11th Circuit).

## II.    DECISIONS OF THIS COURT SUPPORT THE INNOCENT GMC OVER THE ILLEGAL SEIZURE OF PROPERTY BY THE GOVERNMENT

A century ago, this Court stated the following:

> If it was not unlawful for the petitioner to have this liquor in his possession at the time of its seizure, its seizure was unlawful, and its detention from its owner is equally unlawful. No proceeding, civil, panel, or criminal, is pending against the petitioner or against the liquor at the present time. . . . It is perfectly plain to us that property lawfully in the possession of A. at the time it was unlawfully seized must be restored to A. When it appears that A. has been unlawfully deprived of that which, under the law, he was at the time entitled to have in his possession.

*In re Brenner*, 6 F.2d 425, 426 (2d Cir. 1925).

Forty years ago, this Court stated in *U.S. v. Place* that the delay of returning a piece of luggage after 90 minutes was itself a violation of the Fourth Amendment:

> "But the Fourth Amendment does not draw any distinction between an unlawful seizure of a person and the similar seizure of his property. In both cases there is an infringement of the person's freedom of action. Police custody of his person precludes him from freely moving about. Police custody of his

9

baggage deprives him of the use of it and its contents. Both create uncertainty and anxiety on his part."

*United States v. Place*, 660 F.2d 44, 51 (2d Cir. 1981).

Respectfully, the luggage in *Place* and the footlocker in *Chadwick* (upon which *Place* is based) received more Due Process protection than Grist Mill Capital's property in this case, which GMC is still trying to get back after a 14-year delay, when this is what the Supreme Court wrote in *Place*, vacating the conviction of a real criminal caught "red-handed" because of a 90-minute delay:

> Although the 90-minute detention of respondent's luggage is sufficient to render the seizure unreasonable, the violation was exacerbated by the failure of the agents to accurately inform respondent of the place to which they were transporting his luggage, of the length of time he might be dispossessed, and of what arrangements would be made for return of the luggage if the investigation dispelled the suspicion. In short, we hold that the detention of respondent's luggage in this case went beyond the narrow authority possessed by police to detain briefly luggage reasonably suspected to contain narcotics. We conclude that, under all of the circumstances of this case, the seizure of respondent's luggage was unreasonable under the Fourth Amendment. Consequently, the evidence obtained from the subsequent search of his luggage was inadmissible, and Place's conviction must be reversed.

*Place*, 462 U.S. at 710.

Recently, within the past few months, several Courts in the Second Circuit have stated the now familiar three rules of Rule 41(g) for the return of property:

> Under Rule 41(g) of the Federal Rules of Criminal Procedure, "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). But such relief is warranted only if the moving party can "demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended."

*United States v. Brennerman*, No. 17-cr-337 (RJS), 2022 U.S. Dist. LEXIS 234309 *15 (S.D.N.Y. Jan. 3, 2023) (cit. omitted).

The Fourth Amendment doesn't become irrelevant once an initial seizure has run its course. Moreover, the Fourth Amendment is also implicated by the Government's delay in returning GMC's seized property, irrespective of the Government's basis for seizing the property. The Government has provided no legitimate justification for continuing to hold GMC's property that was illegally seized other than the speculative chance of a second Carpenter trial and to defend against his 2255 petition:

"A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification."

*Brewster v. Beck*, 859 F.3d 1194, 1196-97 (9th Cir. 2017).

Indeed, any hypothetical Second Trial is prohibited by the Double Jeopardy Clause of the Constitution. But even if it wasn't, the Supreme Court's recent decisions in *Ciminelli vs. United States*, 21-1170 (2023) and especially *Binday v. United States*, 21-1241 (2022), suggest that Mr. Carpenter should never have been indicted in the first place. Every piece of evidence presented at trial is neatly preserved on PACER, and as to anything else that might be present in the 26 boxes, the Government has already had 14 years to identify the same. The simple truth is that anything relevant to conviction in those boxes (whether for a judge trial or a jury trial), has already been identified by the Government and retained or abandoned.

Despite the undisputed fact that GMC was never indicted – or charged with any crime – it is GMC's property the Government seeks to unconstitutionally retain. To be sure, the "footlocker" in *Chadwick*, the burned Auction House in *Michigan v. Tyler* and the office of a fugitive-

12

fraudster in *G.M. Leasing* all received greater Due Process and Fourth Amendment protection than Grist Mill Capital's office at 100 Grist Mill Road in 2010 and 2011.

In this case, which is similar to *Groh v. Ramirez,* 540 U.S. 551, 564 (2004), "the affidavit contained "glaring deficienc[ies] that any reasonable police officer would have known was constitutionally fatal." No search warrant affidavit was attached to the search warrant in either the April 2010 raid or the May 2011 raid – and the Lynn Allen Search Warrant in this case does not even describe a crime, much less describe what is to be seized on the face of the warrant. The Lynn Allen Search Warrant was far worse than the Search Warrant in *650 Fifth Avenue* (*See* SA 20, SA-21) regarding which this Court stated:

> The good-faith exception recognizes that "the deterrence benefits of exclusion vary with the culpability of the law enforcement conduct at issue." *Davis v. United States*, 564 U.S. 229, 238 (2011). "When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Id.* . . . The fourth scenario "depend[s] on the circumstances of the particular case." *Leon*, 468 U.S. at 923, 104 S.Ct. 3405. It applies, for example, when a warrant "fail[s] to particularize the place to be searched or the things to be seized." *Id.* The animating concern is whether the "warrant [is] so facially deficient ... that the executing officers cannot reasonably presume it to be valid."

13

That language fits this case like a glove. This warrant is facially deficient. It does not even arguably include a reference to the Claimants' alleged crimes or a temporal scope for the items to be seized. No reasonable officer could have presumed that this glaringly deficient warrant was valid.

*In re 650 Fifth Ave.*, 934 F.3d at 162-63 (2d Cir. 2019).

CONCLUSION

In ruling on Plaintiff's 41(g) motion, Judge Underhill had the benefit of dealing with the parties on this issue for several years, as well as the Government's often shifting but persistent refusals to release the seized financial records. It was that experience with the parties and issues in this matter that led him to rule that:

> "I am neither persuaded that the government's dilatory return of the documents is 'reasonable' nor that it continues to need those documents in the first place."

The Panel's holding that the Government had established that need, and that the burden relating to proof of the same belonged to the innocent GMC rather than the Government, deserves an en banc reconsideration of this matter under current Second Circuit law.

Indeed, 14 years of holding seized evidence was long enough that the Government could have selected anything potentially "legitimate" with which to prosecute Mr. Carpenter. The alternative is to allow the

14

seized records to be retained indefinitely, a result Judge Underhill was attempting to avoid, and a result this Court should not tolerate or countenance.

Dated: January 24, 2024

Respectfully submitted,

*/s/ Jonathan J. Einhorn*
JONATHAN J. EINHORN, ESQ.
ATTORNEY & COUNSELOR AT LAW
*Attorneys for Plaintiff-Appellee-Cross-Appellant Grist Mill Capital LLC*
129 Whitney Avenue
New Haven, Connecticut 06510
(203) 777-3777
einhornlawoffice@gmail.com

## CERTIFICATE OF COMPLIANCE

1.      This Petition complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because this Petition contains 3,035 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This Petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because: this Petition has been prepared in proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: January 25, 2024

Respectfully submitted,

*/S/ Jonathan J. Einhorn*
JONATHAN J. EINHORN, ESQ.
ATTORNEY & COUNSELOR AT LAW
*Attorneys for Plaintiff-Appellee-Cross-*
   *Appellant Grist Mill Capital LLC*
129 Whitney Avenue
New Haven, Connecticut 06510
(203) 777-3777
einhornlawoffice@gmail.com

**ORDER**

22-1057, 22-1061
*Carpenter v. Allen*

# United States Court of Appeals
## for the Second Circuit

_____

August Term 2022

(Argued:  June 28, 2023     Decided:  December 11, 2023)

Nos. 22-1057, 22-1061

_____

LYNN ALLEN, CHERI GARCIA, TIMOTHY CORSI,

*Defendants-Appellants-Cross-Appellees*,

— v. —

GRIST MILL CAPITAL LLC,

*Plaintiff-Appellee-Cross-Appellant*,

DANIEL E. CARPENTER,

*Plaintiff.*∗

_____

Before:      LYNCH, LOHIER, and BIANCO, *Circuit Judges*.

The government, through defendant-appellant-cross-appellee Lynn Allen, an agent of the United States Department of Labor ("DOL"), appeals from an order of the United States District Court for the District of Connecticut (Underhill, *J.*)

_____

∗ The Clerk of the Court is respectfully instructed to amend the caption to conform with the above.

granting, in part, plaintiff-appellee-cross-appellant Grist Mill Capital LLC's ("GMC") motion for return of property under Federal Rule of Criminal Procedure 41(g).

At issue is the government's retention of financial documents, which the DOL obtained pursuant to court-authorized search warrants and a grand jury subpoena in connection with a federal criminal investigation and prosecution of Daniel E. Carpenter in the United States District Court for the District of Connecticut. In May 2022, the district court granted, in part, GMC's motion under Rule 41(g), holding that the government failed to demonstrate a legitimate need justifying the continued retention of the seized materials given that this Court affirmed Carpenter's criminal conviction and the Supreme Court denied his petition for *certiorari*.

We **VACATE** the district court's order and **REMAND** for further proceedings consistent with this opinion, and we **DISMISS** GMC's cross-appeal as moot.

> NEERAJ N. PATEL (Sandra S. Glover, *on the brief*), Assistant United States Attorneys, *for* Vanessa Roberts Avery, United States Attorney for the District of Connecticut, New Haven, CT, *for Defendants-Appellants-Cross-Appellees*.
>
> JONATHAN J. EINHORN, Jonathan J. Einhorn Law Offices, New Haven, CT (Jeffrey R. Sandberg, Palmer Lehman Sandberg, PLCC, Dallas TX, *on the brief*), *for Plaintiff-Appellee-Cross-Appellant*.

JOSEPH F. BIANCO, *Circuit Judge*:

In this case, the government appeals from an order of the United States District Court for the District of Connecticut (Underhill, *J.*) granting, in part,

plaintiff-appellee-cross-appellant Grist Mill Capital LLC's ("GMC") motion for return of property under Federal Rule of Criminal Procedure 41(g). This case comes to us after a complex procedural history. GMC filed the Rule 41(g) motion on the docket of a *Bivens* action that GMC filed, along with Daniel E. Carpenter (collectively, "plaintiffs"), against defendants Lynn Allen, Cheri Garcia, and Timothy Corsi in their individual capacities, who were law enforcement agents employed by the United States Department of Labor ("DOL") (collectively, the "DOL agents").[1] That action was filed shortly after plaintiff Carpenter had been indicted on criminal charges, and was stayed pending the criminal action, in which Carpenter was eventually convicted.

At issue is the government's retention of financial documents, which the DOL obtained pursuant to court-authorized search warrants and a grand jury subpoena in connection with the federal criminal investigation and prosecution of Carpenter. In that prosecution, also in the United States District Court for the District of Connecticut, the government alleged that Carpenter used various business entities, including GMC, to facilitate a fraudulent life insurance scheme, causing over $50 million in losses. In 2016, Carpenter was convicted of multiple

---

[1] We further explain this complex procedural history *infra*.

fraud and money laundering offenses and was subsequently sentenced to 30 months' imprisonment. In the *Bivens* action, plaintiffs asserted constitutional claims against the DOL agents who, in 2011, executed the search warrant at the office building where GMC was located and seized evidence in connection with the DOL's investigation. The complaint also asserted a claim for the return of the seized materials pursuant to Rule 41(g).

Following completion of the criminal case, the district court turned to the *Bivens* action. In the course of the renewed proceedings, plaintiffs moved under Rule 41(g) for the return of certain of the seized records. In March 2022, the district court granted that motion in part, holding that the government failed to demonstrate a legitimate need justifying the continued retention of the seized materials given the final resolution of the criminal case upon the Supreme Court's denial of Carpenter's petition for *certiorari*. However, because copies of the seized materials were already in plaintiffs' possession and the documents contained third parties' personal identifying information that Carpenter had previously used to perpetrate the fraudulent scheme, the district court ordered the government to destroy the seized materials still in its possession, rather than to return them to plaintiffs.

The government contends on appeal that the district court abused its discretion in ordering the destruction of the seized materials, rather than allowing the government to retain them given, among other things, Carpenter's pending collateral attack on his criminal convictions in a *pro se* motion he filed pursuant to 28 U.S.C. § 2255 ("Section 2255"). GMC cross-appeals the district court's order, arguing that the seized documents should be returned to it, rather than destroyed.

We hold that the district court exceeded its discretion in granting the Rule 41(g) motion because the government has demonstrated a legitimate need to retain the property at issue to defend against Carpenter's pending Section 2255 motion collaterally attacking his convictions and to preserve evidence for use at a potential retrial should that motion succeed.

Accordingly, we **VACATE** the district court's order and **REMAND** for further proceedings consistent with this opinion, and we **DISMISS** GMC's cross-appeal as moot.

## I.  BACKGROUND

Carpenter's various fraudulent financial schemes have spawned litigation across multiple jurisdictions for over a decade.  *See Iantosca v. Benistar Admin. Servs., Inc.*, 567 F. App'x 1, 2 (1st Cir. 2014) (Souter, *J.*) (describing the then-"latest

5

chapter [of] protracted litigation arising out of financial misconduct by Daniel Carpenter and entities controlled by him").[2]  Indeed, the procedural history giving rise to this appeal is complex.   We begin by explaining the background of Carpenter's criminal convictions in the District of Connecticut.  We then turn to the two *Bivens* actions that Carpenter and GMC initially filed while Carpenter's criminal case was still pending and the Rule 41(g) motion that is the subject of this appeal.

### A.  The Searches of the Simsbury Offices

Carpenter worked for major corporations in the life insurance industry for more than two decades.  During his career, he developed considerable expertise with welfare benefit plans, which are mechanisms employers use to provide various types of benefits, including life insurance, to employees.  Carpenter ultimately started his own businesses and became the trustee for several of the largest welfare benefit plans in the United States.

---

[2]  Separate from the *Iantosca* appeal, Carpenter was also convicted in the United States District Court for the District of Massachusetts of mail and wire fraud and sentenced to 36 months' imprisonment. *See United States v. Carpenter*, 781 F.3d 599 (1st Cir.), *cert. denied*, 577 U.S. 871 (2015).  Neither of these First Circuit appeals is related in substance to the instant appeal.

6

A number of entities Carpenter controlled, including GMC, had offices located in a building, allegedly owned by Carpenter, at 100 Grist Mill Road in Simsbury, Connecticut (the "Simsbury offices"). As relevant to this appeal, Carpenter was the subject of two federal criminal investigations that involved searches of the Simsbury offices.

The first investigation was conducted by the Internal Revenue Service ("IRS") under the supervision of the United States Attorney's Office for the Eastern District of Wisconsin. In April 2010, the IRS executed a search warrant authorizing the seizure of documents located at the Simsbury offices that were related to the alleged promotion and administration of unlawful welfare benefit plans. The agents seized hundreds of boxes of documents and imaged several computers and servers. After the search, while the investigation was still ongoing, fifteen of the business entities based in the Simsbury offices and two individuals moved in the United States District Court for the District of Connecticut for the return of their property under Federal Rule of Criminal Procedure 41(g). *See Benistar Admin. Servs., Inc. v. IRS*, No. 10-mc-60 (AVC) (D. Conn); *Pettibone Tavern, LLC v. IRS*, No. 10-mc-64 (AVC) (D. Conn.). As part of a settlement agreement and court orders resolving those motions, the government agreed to return the original documents

7

after it had a reasonable opportunity to copy them. Documents an IRS filter team determined to be potentially relevant to its investigation were returned to and maintained in the custody of Halloran and Sage LLP, a Connecticut-based law firm that represented many of the entities. Boxes containing documents that the team determined were not potentially relevant were directly returned to the Simsbury offices. The IRS also continued to hold some amount of material in Wisconsin.

The second investigation was conducted by the DOL under the supervision of the United States Attorney's Office for the District of Connecticut. That investigation concerned a separate alleged fraudulent scheme to induce life insurance companies to issue certain plans that they otherwise would not have issued. Specifically, the alleged fraud involved stranger-originated life insurance ("STOLI") policies, which are policies that are obtained for transfer on the secondary market rather than for estate-planning purposes.

In May 2011, as part of that investigation, the DOL executed a search warrant at the Simsbury offices and seized various documents and imaged several computers and servers. In addition, because some of the evidence the IRS had seized in 2010 was relevant to the DOL's investigation, the DOL obtained search warrants to copy the images of the computers or servers seized by the IRS and to

search original material still being held by the IRS.  The DOL also obtained and served a grand jury subpoena for certain boxes of documents that were still being held by the Halloran and Sage law firm.

### B.  Carpenter's Criminal Convictions

In May 2014, a federal grand jury in the District of Connecticut returned a superseding indictment, charging Carpenter with 57 counts of mail- and wire-fraud and money-laundering offenses arising from his alleged participation in the STOLI scheme investigated by the DOL.  The government provided Carpenter's defense counsel comprehensive discovery of all seized materials in the form of a scanned and searchable database.  Before trial, Carpenter unsuccessfully moved to suppress evidence seized from both the 2010 IRS and the 2011 DOL searches of the Simsbury offices on Fourth Amendment and other grounds.

Following a bench trial, the district court found Carpenter guilty on each of the 57 counts and subsequently sentenced him to 30 months' imprisonment.[3]  The district court further ordered Carpenter to pay restitution of over $12.8 million, based on a loss amount of nearly $54 million.  This Court subsequently affirmed

---

[3]  After Carpenter was convicted in the District of Connecticut, the United States Attorney's Office for the Eastern District of Wisconsin informed Carpenter that the government had declined the prosecution of the IRS case.

Carpenter's convictions, *United States v. Bursey*, 801 F. App'x 1 (2d Cir.) (summary

order), and the United States Supreme Court denied *certiorari* on November 9,

2020, 141 S. Ct. 820 (2020).

Carpenter filed a separate appeal to challenge the restitution order. *See*

*United States v. Carpenter*, No. 19-674 (2d Cir.). We ordered that appeal to be held

in abeyance until the district court ruled on the government's motion to amend

the restitution order.

Carpenter also continues to challenge his convictions in the district court.

In February 2021, Carpenter filed a *pro se* motion for the release of grand jury

transcripts, asserting that the materials that the government seized during the IRS

and DOL searches contained exculpatory evidence that the government withheld

from the grand jury. Also in February 2021, Carpenter filed a *pro se* motion to

dismiss the superseding indictment for lack of jurisdiction.

In November 2021, Carpenter filed a *pro se* Section 2255 motion to set aside

his convictions, claiming that the federal agents exceeded the scope of their

warrants and that the government improperly withheld material to which he was

entitled under *Brady v. Maryland*, 373 U.S. 83 (1963), and the Jencks Act, 18 U.S.C.

§ 3500. Carpenter later supplemented his Section 2255 motion to argue that his

convictions are invalid pursuant to the U.S. Supreme Court's recent decision in *Ciminelli v. United States*, 598 U.S. 306 (2022).

All three of these post-conviction motions—for release of the grand jury transcripts, to dismiss the superseding indictment, and to vacate the convictions under Section 2255—remain pending before the district court.

### C. The *Bivens* Lawsuits and Rule 41(g) Motions

While the criminal investigation and prosecution was pending, Carpenter and GMC together filed two separate civil actions in the United States District Court for the District of Connecticut, asserting claims under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), in connection with the 2010 and 2011 searches at the Simsbury offices and, among other things, seeking the return of the property seized during those searches.

### 1. The IRS *Bivens* Lawsuit

In 2013, prior to the indictment in the criminal case, Carpenter and GMC filed a *Bivens* action against the IRS officials that were allegedly involved in the 2010 search of the Simsbury offices. In a second amended complaint, plaintiffs alleged that the search was unconstitutional and also sought a return of the seized

property under Rule 41(g).  The district court stayed the request for return of property pending resolution of the criminal case.

In 2015, the district court denied, in substantial part, the government's motion to dismiss.  The government ultimately appealed that order, and this Court remanded the matter to the district court, noting that the Court had since vacated a decision that the district court had relied on in its order and that the scope of the parties' dispute appeared to have narrowed at oral argument.  *See Carpenter v. Koskinen*, 692 F. App'x 666 (2d Cir. 2017) (summary order).  After plaintiffs filed a third amended complaint, the district court dismissed the underlying claims against certain defendants, and that partial judgment was affirmed on appeal.  *See Carpenter v. Shulman*, 790 F. App'x 285 (2d Cir. 2019) (summary order).

## 2.  The DOL *Bivens* Lawsuit

In 2014, shortly after the filing of the criminal indictment, Carpenter and GMC filed another *Bivens* action against DOL agents allegedly involved in the 2011 search of the Simsbury offices.  Similar to the *Bivens* action against the IRS agents, the complaint asserted various constitutional claims and also included a demand for return of property pursuant to Rule 41(g).  In October 2015, the district court stayed the action pending the resolution of Carpenter's criminal case.

In 2020, after the Supreme Court denied Carpenter's petition for *certiorari* in his criminal case, the district court lifted the stay and the case was ultimately reassigned to then-Chief Judge Stefan R. Underhill.  The district court later dismissed most of plaintiffs' claims, but allowed "the claims regarding the destruction of property, Carpenter's detention during the search, and whether the search exceeded the scope of the warrant" to proceed.  Joint App'x at 10. Following limited discovery, the parties filed motions for summary judgment on the remaining issues, which have been fully briefed and are now pending in the district court.

### 3.  The Rule 41(g) Motions

Following the lifting of the stays in both *Bivens* lawsuits, the district court ordered the DOL in the instant case and the IRS (in the other then-pending *Bivens* action) to show cause as to "why all items seized or re-seized by the government entities in connection with its investigation of Daniel Carpenter and [GMC]—with the exception of Items 28 and 29 as defined in the joint status report . . . —shall not be immediately returned to Carpenter and [GMC] by the government entity that

currently possesses them." *Id.* at 26.[4]  In addition, at the district court's direction,

Carpenter and GMC filed a Rule 41(g) motion for return of property, which they

had previously filed in the IRS action, in the DOL action.  In that motion, Carpenter

and GMC informed the district court that the parties had narrowed the scope of

the dispute to 29 boxes of the documents, nearly all of which were in the DOL's

custody.  Moreover, unlike the Rule 41(g) demand that had been contained in the

original complaint, which was based on the constitutional violations allegedly

committed by the defendant DOL agents in the course of the searches and seizures,

the motion now was premised, as permitted by Rule 41(g), solely on the claim that

the seized materials should be returned to their owners because the criminal

proceedings have been completed and the government no longer has an

evidentiary need for them.

With respect to the Rule 41(g) motion in the IRS *Bivens* action, the district

court ordered that the government destroy, rather than return, Items 28 and 29.

**[SA6]**  Additionally, because the IRS represented that it no longer had possession

---

[4]  Items 28 and 29 were a hard drive containing scanned copies of documents and mirror images of servers and drives that the IRS had obtained in its 2010 search of the Simsbury offices.  In the above-referenced joint status report to the district court, the government stated that it intended to destroy items 28 and 29 while GMC and Carpenter argued that items 28 and 29 should be returned to them.

of the other materials sought by plaintiffs, the district court denied the motion as

moot with respect to the remaining items and entered judgment in favor of

Carpenter and GMC.[5]  Neither party appealed any aspect of the district court's

order on the Rule 41(g) motion in the IRS *Bivens* action.

In the DOL *Bivens* action, the government opposed the Rule 41(g) motion.

Specifically, the government offered six distinct grounds in support of its need to

retain the documents:  (1) to use as evidence at a retrial, if Carpenter was successful

in vacating his convictions; (2) to defend against Carpenter's Section 2255 petition;

(3) to defend against Carpenter's motion for release of grand jury minutes; (4) to

defend against Carpenter's appeal of the district court's restitution order in his

criminal case; (5) to respond to then-anticipated discovery in the DOL *Bivens*

action; and (6) to defend against anticipated future litigation that could implicate

the seized documents.

On March 15, 2022, the district court granted, in part, the Rule 41(g) motion

in the instant action.  The district court held that the government was not entitled

---

[5]  After the district court entered judgment, the government filed a notice certifying that the IRS had no paper documents in its possession from the 2010 Simsbury offices search and that it had destroyed all electronic hardware related to that search.

15

to retain the property, but ordered the DOL to destroy 26 boxes of documents in its custody, rather than returning them to plaintiffs.[6]

At the outset, the district court determined that the return of property is a permissible remedy in a *Bivens* action and that claim preclusion was not a bar to the Rule 41(g) motion. The district court also rejected the government's argument that the plaintiffs lacked standing to bring the Rule 41(g) motion and concluded that, because the criminal proceedings had ended, the government had the burden of demonstrating its need to retain the seized documents. The district court then found that the government's articulated interests in retaining the documents were insufficient to satisfy its burden. The district court rejected the government's position that it was necessary to retain evidence not introduced at trial because the Section 2255 motion would be decided on the trial record. The district court also concluded that, "[a]s for the *Bivens* proceedings or any speculative proposition of a retrial, the government may not piggyback off a decade-old warrant to withhold documents indefinitely without specifying a legitimate need for them, which it fails to do here." Special App'x at 18. The district court further noted that the

---

[6] By the time of the district court's order, the parties had narrowed their dispute from 29 boxes to 26 boxes.

16

government could obtain any documents necessary to respond to the pending *Bivens* claims against the DOL through civil discovery.

However, the court ordered the government to destroy the documents because the government had represented that plaintiffs had copies of the documents and because "the documents contain third parties' personally identifying information used by [p]laintiffs to perpetrate a fraud, and prudence counsels in favor of not returning them." *Id.* Plaintiffs subsequently filed a motion for reconsideration as to the portion of the district court order directing the government to destroy the documents and sought to stay the destruction order. The district court denied the reconsideration motion, including the request to stay destruction of the documents.

The government appealed. GMC then cross-appealed.[7] The parties also filed a joint stipulation with the district court in which they agreed that the destruction of the materials would be stayed pending resolution of this appeal, but

_____

[7] The government contends that, although both Carpenter and GMC filed the notice of appeal, Carpenter has waived his arguments on appeal because he did not file a brief on his own behalf either in response to the government's appeal or in support of his cross-appeal, and GMC's briefs do not indicate that they were filed on behalf of Carpenter. We agree. In any event, even if we were to attribute GMC's arguments to Carpenter, such arguments would fail for the same reasons explained *infra*.

the district court has not "so ordered" or taken any other action with respect to the joint stipulation.

## II.   JURISDICTION

Prior to oral argument, this Court ordered the parties to brief the issue of this Court's appellate jurisdiction.   Having reviewed those submissions, we determine that we have jurisdiction over the district court's order under 28 U.S.C. § 1291.

Before explaining why we have jurisdiction under 28 U.S.C. § 1291, we briefly review certain aspects of the complicated procedural history that bear directly on the question of appellate jurisdiction.   In May 2014, while a criminal action was pending against Carpenter, Carpenter and GMC initiated a *Bivens* action against the defendant DOL agents.   In the same complaint, they included a Rule 41(g) demand for return of property from the United States, based on the same alleged constitutional violations committed by the agents.   Although the United States was not named as a defendant, the plaintiffs sued Allen in both her individual and official capacities, the latter of which effectively brings in the United States as a party.   *See Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("[A]n action against a federal agency or federal officers in their

18

official capacities is essentially a suit against the United States . . . ."); *Silver v. Smith*, 70 F. App'x 17, 19 (2d Cir. 2003) (summary order) ("[B]ecause [plaintiff] sued [IRS employees] only in their official, not their individual, capacities, the district court properly substituted the United States for its employees as the defendant in this action."). Moreover, the Rule 41(g) allegations in the complaint do not mention any of the individual defendants, referencing only "the government." Joint App'x at 23. The defendants were at all times represented by the United States Attorney, and in all proceedings regarding Rule 41(g), the parties proceeded without objection to litigate the interests of the United States, not the individual DOL agents, in retaining the property at issue. We therefore do the same.

All aspects of the civil case were stayed, however, pending the resolution of the criminal proceedings against Carpenter, during which the district court denied a motion to suppress the seized documents on Fourth Amendment grounds. When the district court, upon the final resolution of the criminal case, turned its attention to the *Bivens* action, the substance of the motion changed. Rather than renew their claims that the documents had been illegally seized, the plaintiffs based the Rule 41(g) motion on the simpler theory that, whether or not the

19

property had been lawfully seized, the plaintiffs as owners of the property were entitled to its return, because, with the criminal case resolved, the government no longer had a legitimate reason to retain it.[8]

Because that motion appears on the docket of the *Bivens* action, which has not yet reached a final judgment, the district court's resolution of that motion may look like the type of interlocutory order that we lack jurisdiction to review. But that appearance is misleading.

First, the motion has no bearing on the *Bivens* action itself. The demand for the return of seized property, based on the termination of the criminal case, seeks relief from the government, not from the individual defendants from whom damages are sought for violating the plaintiffs' constitutional rights. The motion's resolution is not a step on the way to resolving the agents' civil liability; rather, it seeks relief independent of the liability of the agents for damages for their alleged constitutional violations.

---

[8] Rule 41(g) (then numbered 41(e)) had been amended to make clear that "a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it." Fed. R. Crim. P. 41 advisory committee's note to 1989 Amendment.

Second, there is an extensive body of law relating to the proper characterization of Rule 41(g) motions. It bears emphasis that Rule 41(g) is a rule of *criminal* procedure; it is not a rule that relates to the processing of *civil* cases. When the motion is made on the docket of a pending criminal case, on the ground that the property in question was illegally seized, the motion has typically been treated as an interlocutory suppression motion, and it has long been the rule that an adverse decision on the motion is not appealable. *See Grant v. United States*, 282 F.2d 165, 169 (2d Cir. 1960).[9]

But while Rule 41(g) is a rule of criminal procedure, we have also long held that where, as here, a motion under that rule is filed "[a]fter a criminal proceeding has ended," the district court should construe such a motion "as initiating a civil action in equity." *Lavin v. United States*, 299 F.3d 123, 127 (2d Cir. 2002); *see also Viola v. United States*, 203 F. App'x 366, 366 (2d Cir. 2006) (summary order) ("[A] motion pursuant to Federal Rule of Criminal Procedure 41([g]) made after the conclusion of the movant's criminal proceedings is treated as a new civil action for equitable relief." (citations omitted)). In other words, we often treat Rule 41(g)

---

[9] With respect to suppression motions that have been *granted*, the government has since been given, by statute, a right to file an interlocutory appeal. 18 U.S.C. § 3731.

motions after the completion of criminal proceedings as stand-alone civil actions in equity that are conceptually and procedurally distinct from the actions in which the motions were docketed.[10]

"Finality is determined on the basis of pragmatic, not needlessly rigid *pro forma*, analysis." *Mead v. Reliastar Life Ins. Co.*, 768 F.3d 102, 109 (2d Cir. 2014) (internal quotation marks and citation omitted); *see Nelson v. Unum Life Ins. Co. of Am.*, 468 F.3d 117, 119 (2d Cir. 2006) ("We are instructed to give Section 1291 a practical, as opposed to technical, construction."). Moreover, the rationale underlying the finality requirement is "to provide the parties with an opportunity

---

[10] The Supreme Court announced in *DiBella v. United States* that decisions on even *pre-indictment* motions under then-Rule 41(e) can be final under 28 U.S.C. § 1291, but only if the motion is "[1] solely for return of property and is [2] in no way tied to a criminal prosecution *in esse* against the movant." 369 U.S. 121, 131–32 (1962). In other words, "[i]f a motion for the return of property is made independently of a criminal prosecution—in that it is not intended to gain some strategic advantage for a criminal defendant—the order denying relief is final." *United States v. Nocito*, 64 F.4th 76, 81 (3d Cir. 2023) (explaining that "an order denying a Rule 41(g) motion can be final because such a motion, unlike a motion to suppress, could be premised entirely on property rights and not intertwined with a criminal prosecution in any way" (citation omitted)). We have read *DiBella* as announcing a test for when a *preindictment* Rule 41(g) appeal is "final for purposes of [§ 1291]." *Standard Drywall, Inc. v. United States*, 668 F.2d 156, 157–58 & n.3 (2d Cir. 1982). Although the Rule 41(g) motion at issue here is not a pre-indictment motion, it nonetheless sufficiently meets the requirements set out in *DiBella* to the extent that those requirements apply to post-indictment or post-proceeding Rule 41(g) motions. *See, e.g.*, *Nocito*, 64 F.4th at 83 (applying *DiBella* to both pre- and post-indictment Rule 41(g) motions).

for a single review of all the questions raised at the trial level . . . and thereby to avoid the waste of time and the delay in reaching trial finality which ensue when piecemeal appeals are permitted." *Nelson*, 468 F.3d at 119 (internal quotation marks and citation omitted). The district court's order here finally resolves the single dispute between the parties to the Rule 41(g) motion—that is, GMC and the United States—as opposed to the ongoing *Bivens* action which, although appearing on the same docket, is between plaintiffs and the individual-capacity defendants and remains unaffected by the district court's order. Accordingly, there is nothing "piecemeal" about the appellate review here. That is why although the district court's order on Rule 41(g) may not look like a "final decision" in *form*, it is a "final decision" in *function* that "conclusively determine[d] the pending claims of all the parties" in the separate action-within-an-action "leaving nothing for the court to do but execute its decision" with respect to the Rule 41(g) action. *Mead*, 768 F.3d at 109 (internal quotation marks and citations omitted).

Accordingly, we conclude that we have appellate jurisdiction to review the district court's resolution of the Rule 41(g) motion.

## III.   MERITS DISCUSSION

The government argues that Carpenter's pending Section 2255 motion challenging his convictions constitutes a legitimate need under Rule 41(g) for it to retain the seized materials at issue at this juncture.  As set forth below, we agree. After the completion of a criminal proceeding, a district court's order granting the return of property is a civil equitable remedy.  *See United States v. Zaleski*, 686 F.3d 90, 92 (2d Cir. 2012); *Diaz v. United States*, 517 F.3d 608, 610 (2d Cir. 2008).  "We review a district court's grant or denial of equitable relief for abuse of discretion, but we review *de novo* any legal conclusion underlying such a decision."  *Zaleski*, 686 F.3d at 92.

Rule 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."  Fed. R. Crim P. 41(g).  As originally adopted, the Rule 41 provision governing the return of property, then codified as Rule 41(e),[11] "provided a method for enforcing the protection against unreasonable search and seizure

---

[11]  In 2002, Rule 41 was reorganized, and subsection (e) was redesignated as subsection (g) without substantive change.  *See De Almeida v. United States*, 459 F.3d 377, 380 n.2 (2d Cir. 2006).  "Accordingly, courts have applied the case law concerning former Rule 41(e) to the current Rule 41(g)."  *Id.*

guaranteed by the Fourth Amendment." 3A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 690 (4th ed. 2023). That changed with a 1989 amendment that expanded then-Rule 41(e)'s scope to allow "a person whose property has been *lawfully seized* [to] seek return of property when aggrieved by the government's continued possession of it." Fed. R. Crim. P. 41 advisory committee's note to 1989 amendment (emphasis added). The 1989 amendment reflected the well-established understanding that "goods not in the nature of contraband, which were legally seized, should be returned when their evidentiary utility is exhausted." *Bova v. United States*, 460 F.2d 404, 406 n.5 (2d Cir. 1972) (Friendly, *C.J.*).[12] In sum, as the advisory committee for the 1989 amendment explained, "[t]he amended rule contemplates judicial action that will respect both possessory and law enforcement interests." Fed. R. Crim. P. 41 advisory committee's note to 1989 amendment.

Several district courts within this Circuit have noted that we have never directly addressed the questions of whether the movant or the government bears the evidentiary burden in the context of a Rule 41(g) motion and when, if ever, that

---

[12] The advisory committee's note to 1989 amendment referenced *United States v. Wilson*, 540 F.2d 1100 (D.C. Cir. 1976), a case that cited our decision in *Bova* with approval. *See id.* at 1103 & n.4.

burden shifts. *See, e.g., United States v. Morgan*, 443 F. Supp. 3d 405, 407 (W.D.N.Y.

2020); *Awan v. United States*, No. 12-cv-3844 (JS), 2014 WL 1343129, at *3 (E.D.N.Y.

Mar. 31, 2014); *Hallock v. United States*, No. 09-cv-1141 (DNH/DEP), 2010 WL

4025615, at *3 (N.D.N.Y. July 28, 2010), *report and recommendation adopted*, No. 09-

cv-11411, 2010 WL 4022935 (N.D.N.Y. Oct. 13, 2010); *Sash v. United States*, No. 09-

cv-450 (DC), 2009 WL 3007379, at *3 & n.4 (S.D.N.Y. Sept. 22, 2009). We now clarify

that, during the pendency of an ongoing criminal investigation or proceeding, the

defendant bears the burden of demonstrating that the government's retention of

the seized property is unreasonable. *See United States v. Chambers*, 192 F.3d 374,

377 (3d Cir. 1999); *see also Ramsden v. United States*, 2 F.3d 322, 326 (9th Cir. 1993)

("The United States' retention of the property generally is reasonable if it has a

need for the property in an investigation or prosecution."). However, once the

criminal proceeding is completed, there is a presumption that non-contraband

property should be returned to its owner and, thus, the evidentiary burden under

Rule 41(g) shifts to the government to demonstrate that it has a "legitimate reason"

for retaining the seized property. *Lavin*, 299 F.3d at 128. In other words, "[a]

26

defendant's [or third party's] right to the return of lawfully seized property is subject to the [g]overnment's legitimate continuing interest in that property." *Id.*[13]

In articulating this evidentiary framework, we are in agreement with our sister circuits that have also determined—consistent with Rule 41(g)'s purpose—that "[t]he government can rebut the presumption that property ought to be returned by proving a 'legitimate reason' for retaining the property that is 'reasonable under all of the circumstances.'" *United States v. Gladding*, 775 F.3d 1149, 1152 (9th Cir. 2014) (alteration adopted) (citation omitted); *accord Perez-Colon v. Camacho*, 206 F. App'x 1, 3 (1st Cir. 2006) (per curiam); *United States v. Pitts*, 639 F. App'x 105, 107 (3d Cir. 2016) (per curiam); *United States v. Roca*, 676 F. App'x 194, 194–95 (4th Cir. 2017) (per curiam); *United States v. Jackson*, 771 F.3d 900, 902 (5th Cir. 2014); *United States v. Silva*, 26 F. App'x 544, 547 (7th Cir. 2001) (unpublished order); *Jackson v. United States*, 526 F.3d 394, 397–98 (8th Cir. 2008); *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1213 n.14 (10th Cir. 2001); *United States v. Potes Ramirez*, 260 F.3d 1310, 1314 (11th Cir. 2001).

---

[13] The district court relied on the substantially similar standard we articulated in *United States v. David*, 131 F.3d 55 (2d Cir. 1997); however, that decision was decided in the context of a constitutional due process challenge to a government seizure of property, *see id.* at 58–59, and is not directly on point here given that GMC has only invoked Rule 41(g).

Here, applying this standard, we conclude that the district court exceeded its discretion in determining that the pending Section 2255 motion did not create a legitimate need for the government to retain the documents even after the completion of Carpenter's criminal proceedings. In rejecting the government's argument that it needed the seized materials to defend against the Section 2255 motion, the district court reasoned that the government had "no need to retain materials that were not introduced as evidence" at Carpenter's criminal trial because the Section 2255 motion would be decided based on the trial record. Special App'x at 18. However, that reasoning failed to take into account the specific claims that Carpenter asserts in his Section 2255 motion, which relate directly to the seized property at issue. In particular, he contends that the agents executing the search exceeded the scope of the warrant. He also asserts that the government failed to disclose *Brady* material that was contained within the seized documents. In order to defend against these claims, the government may need to utilize the entirety of the documents seized during the search, not just the seized documents admitted as exhibits during the trial.

Moreover, a district court is not limited to the trial record in addressing claims for relief under Section 2255. Indeed, Section 2255 requires the district court

to hold a hearing, or to "use methods . . . to expand the record without conducting a full-blown testimonial hearing," *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001), "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting 28 U.S.C. § 2255(b)).  Thus, the district court erred in concluding that the seized documents could have no bearing on the government's defense against the claims related to the search in the pending Section 2255 motion, or in the district court's resolution of those claims.

Even apart from the government's articulated need to retain the materials to defend against the particular claims in Carpenter's Section 2255 motion, we conclude that the government demonstrated a legitimate need to retain the seized materials during the pendency of the Section 2255 motion in order to preserve its ability to use the seized materials as evidence in a potential retrial should Carpenter prevail in his collateral attack on his criminal convictions.  In the context of a Rule 41(g) motion made while a defendant's direct appeal is still pending, courts have recognized that the government has a legitimate need to retain seized materials because of the possibility of a retrial if an appeal is successful.  *See, e.g.*, *United States v. Saunders*, 957 F.2d 1488, 1495 (8th Cir. 1992) (affirming denial of

Rule 41 motion on the basis that "[t]he motion for the return of the [seized] paperwork, even papers that were not introduced at trial, was premature because defendant's direct appeal was still pending"). That same logic applies with equal force here, where the conviction is being collaterally attacked under Section 2255 and, thus, rebuts the general presumption that the seized materials should be returned once the criminal proceeding has ended. *See, e.g.*, *United States v. Mendez*, 860 F.3d 1147, 1150 (8th Cir. 2017) (recognizing that "[t]he pendency of a direct appeal or a post-conviction proceeding might justify the government's further retention of property as potential evidence in a criminal case").[14]

---

[14] GMC argues that a retrial is not possible because the Double Jeopardy Clause of the Constitution would bar a second trial in the event that Carpenter's Section 2255 motion is successful. The Double Jeopardy Clause does not categorically bar the retrial of a defendant whose convictions are overturned on direct appeal or collateral attack. *See, e.g.*, *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988) ("[T]he Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction."). Having said that, we express no view as to whether, under the particular circumstances of this case, the Double Jeopardy Clause could bar any retrial of Carpenter should his Section 2255 motion prevail. Instead, we more narrowly conclude that the government's legitimate need to retain seized property as evidence during a pending Section 2255 motion challenging a conviction is not weakened at this stage by any anticipated legal or practical obstacles to a retrial should the collateral attack on the conviction be successful. *See generally United States v. Gulledge*, 739 F.2d 582, 586 (11th Cir. 1984) ("If [the defendant] believes that the introduction of certain evidence at his second trial will constitute double jeopardy or violate any other rights, he may press the claim in the district court and on appeal after final judgment has been entered against him.").

During a conference on the Rule 41(g) motion, the district court suggested that the government did not need to retain the seized materials because, in a potential retrial, the government could rely upon copies of the previously admitted trial documents to prove its case. However, "[u]pon . . . reversal of a conviction[,] the [g]overnment is not limited at a new trial to the evidence presented at the first trial, but is free to strengthen its case in any way it can by the introduction of new evidence." *United States v. Shotwell Mfg. Co.*, 355 U.S. 233, 243 (1957); *see also United States v. Gallagher*, 602 F.2d 1139, 1143 (3rd Cir. 1979) ("[A]part from the requirement that the new evidence conform to the indictment, there is no reason to restrict the government's case at a second trial. By the same token, the defense is also free to present testimony at the retrial which it had not utilized in the first encounter.").

In rejecting the government's argument, the district court overlooked the many scenarios in which the government may need to offer new evidence at a retrial, including from the seized materials, even though the evidence was not offered at the first trial. For example, if the Section 2255 motion were granted based upon the Supreme Court's rejection in *Ciminelli* of the "right-to-control" theory of wire fraud (under which Carpenter was prosecuted and the jury was

instructed), in a retrial the government might focus on an alternative theory of criminal liability against Carpenter, with a potential need to utilize other evidence from the seized materials to support the alternative theory. In addition, although Carpenter consented to a bench trial at the first trial, he could opt for a jury at any retrial, and the government thereby may need to adjust its trial strategy to present different evidence to a jury. Moreover, Carpenter would be free to offer new defenses and legal arguments at a retrial and, under those circumstances, the government may need to rely upon additional evidence from the seized materials to respond, including to rebut new evidence offered by the defendant at a retrial. In short, when a Section 2255 motion is pending, Rule 41(g) does not operate to limit the government's evidentiary options at a retrial if the motion is successful.[15] Instead, the existence of a pending Section 2255 motion challenging a conviction creates a legitimate need for the government to retain any seized materials that

---

[15] GMC points out that—to the extent it is formally a separate entity from Carpenter—it has never been charged with a criminal offense. However, the government may lawfully seize evidence from even innocent third parties. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 560 (1978) (holding that the Fourth Amendment allows for warrants where "the owner or possessor of the place to be searched is not . . . reasonably suspected of criminal involvement").

could be used as evidence at a potential retrial, even if the materials were not introduced as evidence in the first trial.[16]

At oral argument, counsel for GMC also noted that the success rate of Section 2255 motions is statistically "negligible" and suggested that a court should take that reality into consideration when assessing the government's claim that it needs to retain the evidence for a potential retrial because of a pending collateral attack. Oral Arg. at 31:40–57. We disagree. As an initial matter, counsel's suggestion is inconsistent with his recent Rule 28(j) letter to this Court, which argued that two recent U.S. Supreme Court decisions, including *Ciminelli*, "will have a major impact on the future of the litigation between the parties [in this case]." GMC Rule 28(j) Letter at 1 (2d Cir. June 20, 2023), ECF No. 102. In any event, even assuming *arguendo* that a particular Section 2255 motion has a low probability of success, that assessment does not undermine the government's legitimate need to retain the seized materials while the motion is pending. Courts

---

[16] Critical to this portion of our holding is that the pending Section 2255 motion seeks to vacate the convictions and, thus, a grant of Carpenter's requested relief implicates a potential retrial on the charges. We need not decide now whether a pending Section 2255 motion that does not challenge the underlying conviction but rather seeks a narrower form of relief, such as a resentencing, creates a legitimate need to retain the seized materials. Nor need we speculate whether the government has a legitimate need to retain the seized materials because of the mere possibility of a Section 2255 motion.

do not consider the likelihood of success of a pending direct appeal of a defendant's criminal convictions in determining whether the government is permitted under Rule 41(g) to retain evidence for a retrial if the appeal is successful, and we do not require such a consideration under Rule 41(g) in connection with a pending Section 2255 motion.  In other words, we conclude the presumed right to the return of seized materials following the completion of the criminal proceedings is rebutted by the existence of the pending Section 2255 motion challenging the conviction, due to the government's legitimate need to retain seized materials as evidence at a potential retrial, regardless of the likelihood of success of that motion.

For similar reasons, we do not impose a requirement that the government demonstrate its need to use the seized materials at a potential retrial on a document-by-document basis.  *See generally Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 601 n.4 (5th Cir. 2021) (per curiam) (explaining, in the context of a Rule 41(g) motion, that the district court was not required to review "each and every document" for claims of privilege but rather could do so "based on categories of documents").  As discussed above, given the many variables that may affect the relevance of various seized documents at a retrial, such a

requirement would place the government and ultimately the district court (which would be required to make any such determination) in an unworkable position when faced with a large volume of seized materials related to an underlying criminal prosecution. Instead, in such situations, the "legitimate need" requirement under Rule 41(g) can be satisfied by the government as long as the *category* of documents at issue would be potentially admissible at a retrial. Here, although GMC generally argued that a potential retrial was not sufficient justification for retaining the seized materials during a pending Section 2255 motion (which we reject for reasons discussed *supra*), it did not contend in the district court (nor does it argue on appeal) that particular categories of documents in the seized materials could not possibly be admitted at a retrial.

Our holding is consistent with the conclusions reached by many other courts under similar circumstances. For example, in *United States v. Alford*, the Eleventh Circuit held that, where the defendant had a pending motion to vacate his conviction, "[t]he [g]overnment has a legitimate need to retain the evidence until [defendant] exhausts his post-conviction remedies because it would need the evidence at a new trial if his motion to vacate is successful." 805 F. App'x 924, 926 (11th Cir. 2020) (per curiam). In addition, two unpublished decisions from the

Ninth Circuit reached the same outcome. *See United States v. Basey*, 837 F. App'x 603, 603 (9th Cir. 2021) (unpublished) ("The government demonstrated a reasonable need to retain the property in light of [defendant's] pending collateral attack on his 2017 convictions."); *United States v. Davis*, 749 F. App'x 618, 619 n.1 (9th Cir. 2019) (unpublished) ("The district court properly denied [defendant's] motion to return the remaining items of property in light of the government's explanation that it was retaining the property in connection with [defendant's] pending habeas corpus proceedings under 28 U.S.C. § 2255.").

Numerous district court decisions have also reached the same conclusion. *See, e.g.*, *United States v. Kourani*, No. 17-cr-417 (AKH), 2022 WL 19762, at *1 (S.D.N.Y. Jan. 3, 2022); *Sosa-Pintor v. United States*, No. 19-cv-033 (CAN), 2019 WL 2273758, at *2 (E.D. Tex. Apr. 22, 2019), *report and recommendation adopted*, No. 19-cv-33 (MAC), 2019 WL 2267293 (E.D. Tex. May 24, 2019); *United States v. Cobb*, No. 14-cr-123 (CEH), 2017 WL 3499257, at *3 (M.D. Fla. Aug. 16, 2017); *Mendoza v. United States*, 10-cv-9002 (HB), 2011 WL 1345712, at *2 (S.D.N.Y. Apr. 4, 2011);

*United States v. Reyes*, No. 06-cr-5005 (FDB), 2010 WL 996416, at *2 (W.D. Wash. Mar. 15, 2010).[17]

Here, the district court expressed its concern that "[t]he government shouldn't be allowed to take documents pursuant to a warrant and hold them indefinitely . . . for whatever purpose it wants." Joint App'x at 56. Along similar lines, GMC emphasizes a government attorney's statement at oral argument to another panel of this Court, in the first appeal in the IRS *Bivens* action, that once the criminal case is over, all materials would be returned. To be sure, we recognize that "the government may not by exercising its power to seize, effect a de facto forfeiture by retaining the property seized indefinitely." *Rodriguez-Aguirre*, 264 F.3d at 1212 (alteration adopted) (internal quotation marks and citation omitted). However, we find that legitimate concern not to be implicated in the current posture of this case. First, we note that, although the documents were seized by the government over a decade ago, only relatively recently did Carpenter's conviction become final on direct appeal when the United States Supreme Court denied his petition for *certiorari* in 2020. Moreover, our narrow holding today is

---

[17] Counsel for GMC acknowledged at oral argument that he was unaware of any court reaching a contrary holding. Our own research has not uncovered any such conflicting authority.

tied to the uncertainty surrounding the criminal convictions created by the pending Section 2255 motion and by no means allows for the government's *indefinite* retention of the seized property. If the pending Section 2255 motion is denied, the legitimate need that we have found sufficient to satisfy Rule 41(g) will cease to exist and, if the government wishes to continue to retain the property, it will be required to meet its burden of demonstrating another legitimate need for such retention.[18]

In sum, we conclude that the district court exceeded its discretion in granting the Rule 41(g) motion and holding that the government failed to

---

[18] We recognize that the government has articulated other alternative grounds to support its legitimate need to retain the documents under the Rule 41(g) standard, including the pending litigation over the restitution order, the ongoing *Bivens* action which contains a claim related to the legality of the 2011 search, and the *pro se* motions to dismiss the indictment and for grand jury materials filed by Carpenter. We need not (and do not) address these alternative grounds raised by the government. Instead, if the current ground for retention based upon the pending Section 2255 motion and a potential retrial were to fade away, plaintiffs can renew their Rule 41(g) motion in the district court, and any remaining arguments for retention of the materials articulated by the government at that juncture would be reassessed by the district court in the first instance. Additionally, to the extent that GMC alleges that the seized documents should be returned on the grounds that they were illegally seized, "because the district court did not reach this question below, we decline to address it for the first time on appeal." *Holland v. Goord*, 758 F.3d 215, 223 (2d Cir. 2014). We nonetheless note that the district court in Carpenter's criminal case rejected similar arguments in its order denying Carpenter's suppression motion, which this Court subsequently affirmed.

demonstrate a legitimate need to retain the property at issue to defend against Carpenter's pending Section 2255 motion collaterally attacking his convictions and also to preserve evidence for use at a potential retrial should his collateral attack succeed.[19]

## IV. CONCLUSION

We **VACATE** the district court's order and **REMAND** to the district court for further proceedings consistent with this opinion, and we **DISMISS** GMC's cross-appeal as moot.

---

[19] Given our determination that the government at a minimum is entitled to retain the seized materials during the pendency of the Section 2255 motion, plaintiffs' cross-appeal challenging the district court's decision ordering the government to destroy the seized materials (rather than to return such materials to plaintiffs) is moot for present purposes, but plaintiffs may reassert such a challenge in the future if the same relief is ordered by the district court in connection with any renewed Rule 41(g) motion.

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of December, two thousand twenty-three.

Before:     Gerard E. Lynch,
            Raymond J. Lohier, Jr.,
            Joseph F. Bianco,
                 *Circuit Judges.*

_____

Lynn Allen, Cheri Garcia, Timothy Corsi,

            Defendants - Appellants- Cross-
Appellees,

v.

Grist Mill Capital LLC,

            Plaintiff - Appellee - Cross- Appellant,

Daniel E. Carpenter,

            Plaintiff.

_____

**JUDGMENT**

Docket Nos. 22-1057(L),
22-1061(XAP)

The appeals in the above captioned case from an order of the United States District Court for the District of Connecticut were argued on the district court's record and the parties' briefs.

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the district court's order is VACATED, the case is REMANDED to the district court for further proceedings consistent with this Court's opinion, and GMC's cross-appeal is DISMISSED as moot.

For the Court:
Catherine O'Hagan Wolfe,
 Clerk of Court